THOMAS E. LOESER (SBN 202724)
tloeser@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
2716 Ocean Park Blvd., Ste. 3088
Santa Monica, CA 90405
Telephone: (206)-802-1272
Fax: (206)-299-4184

*Counsel for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ZIA HICKS, JESSICA SORTDESANZ, and BRANDI BERRY on behalf of themselves and of all others similarly situated,

Plaintiffs,

v.

PACIFIC HEALTHWORKS, L.L.C. and LA PEROUSE, LLC,

Defendants.

Case No. 2:25-cv-7831

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs Zia Hicks, Jessica Sortdesanz, and Brandi Berry individually and on behalf of all others similarly situated ("Plaintiffs"), bring this action against Defendants Pacific Healthworks, L.L.C. ("Pacific) and La Perouse, LLC ("La Perouse") (collectively, "Defendants") seeking monetary damages, restitution, and/or injunctive relief for the proposed Class and Subclass, as defined below. Plaintiffs make the following allegations upon information and belief, the investigation of counsel, and personal knowledge or facts that are a matter of public record.

## I. INTRODUCTION

1. The release, disclosure, and publication of sensitive, private data can be devasting. Not only is it an intrusion of privacy and a loss of control, but it is a harbinger of identity theft: for victims of a data breach, the risk of identity theft more than quadruples.[1] A data breach can have a grave consequences for victims for years after the actual date of the breach—with the obtained information, thieves can wreak many forms of havoc: open new financial accounts, take out loans, obtain medical services, obtain government benefits, and/or obtain driver's licenses in the victims' names, forcing victims to maintain a constant vigilance over the potential misuse of their information. Moreover, the release, disclosure, and publication of private medical information, such as diagnosis, medications, and prescriptions can lead to sophisticated and costly insurance fraud, as well as embarrassment, humiliation and blackmail.

2. Defendant Pacific markets itself as "the leading physician practice management company in Southern California."[1]

3. Defendant La Perouse "is a doctor-owned billing and coding management company" that provides "services ranging from MSO,

[1] https://pacifichealthworks.com/ (last visited Aug. 19, 2025); https://cybernews.com/news/pacific-healthworks-everest-ransomware-attack-la-perouse-data-leak-physician-groups/?utm_source=chatgpt.com (last visited Aug. 19, 2025).

ED/Hospitalist/Anesthesia Management, Telemedicine, and Billing/Coding."[2]

4. On or around August 10, 2025, Everest Ransomware Group ("Everest") reportedly published stolen data from Pacific and La Perouse.[3] Between Defendants, Everest "provided hundreds of file samples to prove its get, including a mass of internal company documents and private patient data."[4] It is believed that the information affected includes:

- Name, social security number, date of birth
- Address, email, home phone, cell phone
- Gender, race, marital status, financial class
- Medical and billing records
- Insurance and medical ID #s
- Insurance claims and diagnosis codes[5]

5. Currently, it is unclear when the data breaches took place. According to reports, Everest lists the dates of the data breach as July 8, 2025, for Pacific and August 8, 2025, for La Perouse, which could be a typo.[6]

6. Upon information and belief, as of today, neither Pacific nor La Perouse has confirmed the data breach, notified affected individuals, or posted notice on their websites.

7. What is extraordinarily troubling about the Data Breach is that even though Defendants knew how valuable patient information is, Defendants failed to adequately protect Plaintiffs' and Class Members' Personal Identifiable

---

[2] https://laperouse.us/about.html (last visited Aug. 19, 2025).

[3] https://www.morningstar.com/news/pr-newswire/20250818dc54183/privacy-alert-pacific-healthworks-emergent-medical-associates-benchmark-hospitalists-and-intensivists-and-anesthesiaworks-under-investigation-for-data-breach-of-patient-and-employee-records (last visited Aug. 19, 2025).

[4] https://cybernews.com/news/pacific-healthworks-everest-ransomware-attack-la-perouse-data-leak-physician-groups/?utm_source=chatgpt.com (last visited Aug. 19, 2025).

[5] *Id.*

[6] *Id.*

Information ("PII") and Protected Health Information ("PHI"). This PII and PHI (together, "Private Information") was compromised due to Defendants' negligent and/or careless acts and omissions and their utter failure to protect customers' sensitive data. Hackers targeted and obtained Plaintiffs' and Class Members Private Information because of its value in exploiting and stealing the identities of Plaintiffs and Class Members. The present and continuing risk to victims of the Data Breach will remain for their respective lifetimes.

8. Pacific manages "over 70 entities, contract with over 1,200 providers, and treat nearly 1.4 million patients per year."[7] La Perouse has four sister companies, including Defendant Pacific.[8] Defendants could easily have allocated a small portion of their revenue or assets towards cybersecurity and prevention to forestall and prevent the Data Breach. But Defendants chose profits over protection of patients most sensitive PII and PHI. As a result of the Data Breach, through which their PII and PHI was compromised, disclosed, and obtained by unauthorized third parties, Plaintiffs and Class Members have suffered concrete damages and are now exposed to a heightened and imminent risk of fraud and identity theft for a period of years, if not decades. Furthermore, Plaintiffs and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft, at their own expense. And they must make family and close friends aware that personal health information about Class Members could be used in fraud and phishing attempts targeting their friends and families. Consequently, Plaintiffs and the other Class Members will incur ongoing out-of-pocket costs for, e.g., purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft and other fraudulent behavior.

[7] *Id.*

[8] https://laperouse.us/about.html (last visited Aug. 19, 2025).

9. By this Complaint, Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose PII and PHI was accessed during the Data Breach.

## II. JURISDICTION & VENUE

10. This Court has subject matter jurisdiction for this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, *et seq.*, because at least one member of the Class is a citizen of a different state than Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

11. The Court has jurisdiction over Defendants because both entities maintain their principal place of business in this District, have sufficient minimum contacts with this District, and have purposefully availed themselves of the privilege of doing business in this District such that it could reasonably foresee litigation being brought in this District.

12. Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because Defendants' principal place of business is located in this District and a substantial part of the events or omissions giving rise to the claims occurred in, was directed to, and/or emanated from this District.

## III. PARTIES

### A. Plaintiff Zia Hicks

13. Plaintiff Hicks is a resident and citizen and is domiciled in the state of California.

14. Plaintiff Hicks has been a patient of La Palma Intercommunity Hospital, located at 7901 Walker St, La Palma, CA 90623, for approximately six years.

15. La Palma Intercommunity Hospital is a partnered with Emergent

Medical Associates and is located at 898 N Pacific Coast Hwy STE 600, El Segundo, CA 90245.[9] Emergent Medical Associates ("Emergent") has the same address as Defendants Pacific and La Perouse

16. According to reports, data samples from dozens of Pacific-connected companies, including Emergent, were leaked by the Everest Ransomware Group.[10]

17. Plaintiff provided confidential and sensitive PII and PHI to Defendants in connection with Defendants' provision of their services. Defendants obtained and continue to maintain Plaintiffs' Private Information and have a legal duty and obligation to protect that PII and PHI from unauthorized access and disclosure.

18. Plaintiff would not have entrusted her Private Information to Defendants had she known that Defendants failed to maintain adequate data security.

19. Plaintiff has not received notice from Defendants of the Data Breach.

20. As a result of the Data Breach and release of her Private Information, which she expected Defendants to protect from disclosure, Plaintiff has suffered emotional distress, including anxiety, concern, and unease about unauthorized parties viewing and potentially using her PII and PHI. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money to contain the impact of the Data Breach.

**B. Plaintiff Jessica Sortdesanz**

21. Plaintiff Sortdesanz is a resident and citizen and is domiciled in the state of California.

---

[9] https://www.ema.us/contact_us.html (last visited Aug. 20, 2025).

[10] See https://cybernews.com/news/pacific-healthworks-everest-ransomware-attack-la-perouse-data-leak-physician-groups/?utm_source=chatgpt.com (last visited Aug. 20, 2025).

22. Plaintiff Sortdesanz has been a patient UC San Diego Primary Care – Eastlake, located at 2295 Otay Lakes Road, Suite 110, Cula Vista, CA 91915, for approximately two years.

23. Upon information and belief, UC San Diego Primary Care Eastlake is a part of UC San Diego Health System. UC San Diego Health East Campus is partnered with Benchmark Hospitalists & Intensivists ("Benchmark") and is located at 898 N. Pacific Coast Highway STE 600, El Segundo, CA 90245.[11] Benchmark has the same address as Defendants Pacific and La Perouse.

24. According to reports, data samples from dozens of Pacific-connect companies, including Benchmark, were leaked by the Everest Ransomware Group.[12]

25. Plaintiff provided confidential and sensitive PII and PHI to Defendants in connection with Defendants' provision of their services. Defendants obtained and continue to maintain Plaintiffs' Private Information and have a legal duty and obligation to protect that PII and PHI from unauthorized access and disclosure.

26. Plaintiff provided confidential and sensitive PII and PHI to Defendants in connection with Defendants' provision of their services. Defendants obtained and continue to maintain Plaintiffs' Private Information and have a legal duty and obligation to protect that PII and PHI from unauthorized access and disclosure.

27. Plaintiff would not have entrusted her Private Information to Defendants had she known that Defendants failed to maintain adequate data security.

28. Plaintiff has not received notice from Defendants of the Data

[11] https://www.benchmark.md/contact_us.html (last visited Aug. 20, 2025).

[12] https://cybernews.com/news/pacific-healthworks-everest-ransomware-attack-la-perouse-data-leak-physician-groups/?utm_source=chatgpt.com (last visited Aug. 20, 2025).

Breach.

29. On August 11, 2025, Plaintiff discovered that someone in Indiana was using her personal information to open a child support case in her name.

30. As a result of the Data Breach and release of her Private Information, which she expected Defendants to protect from disclosure, Plaintiff has suffered emotional distress, including anxiety, concern, and unease about unauthorized parties viewing and potentially using her PII and PHI. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money to contain the impact of the Data Breach.

**C. Plaintiff Brandi Berry**

31. Plaintiff Berry is a resident and citizen and is domiciled in the state of California.

32. Plaintiff Berry has been a patient of Corona Regional Medical Center, located at 800 S Main St, Corona, CA 92882, for approximately fifteen years.

33. Corona Regional Medical is partnered with Benchmark Hospitalists & Intensivists ("Benchmark") and is located at 898 N. Pacific Coast Highway STE 600, El Segundo, CA 90245. Benchmark has the same address as Defendants Pacific and La Perouse.

34. According to reports, data samples from dozens of Pacific-connected companies, including Benchmark, were leaked by the Everest Ransomware Group.

35. Plaintiff provided confidential and sensitive PII and PHI to Defendants in connection with Defendants' provision of their services. Defendants obtained and continue to maintain Plaintiffs' Private Information and have a legal duty and obligation to protect that PII and PHI from unauthorized access and disclosure.


Cotchett, Pitre, McCarthy, LLP
2716 Ocean Park Blvd, Suite 3088
Santa Monica, CA, 90405

36. Plaintiff would not have entrusted her Private Information to Defendants had she known that Defendants failed to maintain adequate data security.

37. Plaintiff has not received notice from Defendants of the Data Breach.

38. As a result of the Data Breach and release of her Private Information, which she expected Defendants to protect from disclosure, Plaintiff has suffered emotional distress, including anxiety, concern, and unease about unauthorized parties viewing and potentially using her PII and PHI. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money to contain the impact of the Data Breach.

### D. Defendant Pacific Healthworks, L.L.C.

39. Defendant Pacific is an LLC that provides physician practice management services. Defendant Pacific maintains its principal place of business at 898 North Pacific Coast Highway, STE 600, El Segundo, California, 90245.

### E. Defendant La Perouse, LLC

40. Defendant La Perouse is an LLC that provides billing and coding management services. Defendant La Perouse maintains its principal place of business at 898 North Pacific Coast Highway, STE 600, El Segundo, California, 90245.

## IV. FACTUAL BACKGROUND

### A. Defendants Failed to Adequately Protect Patient Data, Resulting in the Data Breach.

41. Defendant Pacific offers physician practice management services to hospital-based physician groups across the Western United States.[13] Defendant La Perouse provides medical billing and coding services.[14]

[13] https://pacifichealthworks.com/index.html (last visited Aug. 19, 2025).

[14] https://laperouse.us/index.html (last visited Aug. 19, 2025).

42. In the course of their business, Defendants collect personal and health information from patients like Plaintiffs.[15] They also maintain medical records subject to the requirements and standards of the Health Insurance Portability and Accountability Act of 1996.[16]

43. As a condition of receiving services, Plaintiffs were required to entrust Defendants with highly sensitive personal and health information. Plaintiffs reasonably expected that Defendants would safeguard her highly sensitive information and keep it confidential.

44. Due to the sensitivity of the PII and PHI that Defendants handle, Defendants are aware of their critical responsibility to safeguard this information—and, therefore, how devastating its theft is to individuals whose information has been stolen.

45. By obtaining, collecting, and storing Plaintiffs' and Class Members' PII and PHI, Defendants assumed equitable and legal duties to safeguard and keep confidential Plaintiffs' and Class Members' highly sensitive information, to only use this information for business purposes, and to only make authorized disclosures.

46. Despite the existence of these duties, Defendants failed to implement reasonable data security measures to protect the information with which they were entrusted and ultimately allowed nefarious third-party hackers to compromise Plaintiffs' and Class Members' PII and PHI.

47. Despite Everest Ransomware Group releasing sensitive data from Defendants on or around August 10, 2025, Defendants have not notified Plaintiffs and other Class Members that their information is in the hands of criminal

---

[15] *See* https://pacifichealthworks.com/privacypolicy.html (last visited Aug. 19, 2025); https://laperouse.us/privacypolicy.html (last visited Aug. 19, 2025).

[16] *See* https://pacifichealthworks.com/HIPAAprivacypolicy.html (last visited Aug. 19, 2025); https://laperouse.us/HIPAAprivacypolicy.html (last visited Aug. 19, 2025.

hackers.

48. There are likely thousands of consumers who do not yet know that their information was impacted by this data breach.

**B. Defendants were well aware of the need to take special care with patients' PII, PHI, and Medical Information.**

49. On the HIPPA Privacy Policy page of its website, Pacific has "guidelines to comply with mandates to final rule HIPPA provisions enacted under the American Recovery and Reinvestment Act; HIPAA Administrative Simplification Privacy and Security Rule, to ensure that customers, visitors, employees, and business associates are knowledgeable of the procedures in place to protect the privacy, use, and disclosure of Protected Health Information (PHI) as well as to ensure that the most current information is available to all staff members/facilities."[17] Pacific also has a Privacy Policy page that "describes the types of information Pacific Healthworks, LLC, … may collect from you or that you may provide when you visit the website: https://www.pacifichealthworks.com/(our"Website"), how we use and share that information, and your choices concerning our data practices."[18]

50. Similarly, the HIPPA Privacy Policy page of Defendant La Perouse has "guidelines to comply with mandates to final rule HIPAA provisions enacted under the American Recovery and Reinvestment Act; HIPAA Administrative Simplification Privacy and Security Rule, to ensure that customers, visitors, employees, and business associates are knowledgeable of the procedures in place to protect the privacy, use, and disclosure of Protected Health Information (PHI) as well as to ensure that the most current information is available to all staff members/facilities."[19] La Perouse also has a Privacy Policy that "describes the

[17] https://pacifichealthworks.com/HIPAAprivacypolicy.html (last visited Aug. 19, 2025).

[18] https://pacifichealthworks.com/privacypolicy.html (last visited Aug. 19, 2025).

[19] https://laperouse.us/HIPAAprivacypolicy.html (last visited Aug. 19, 2025).

types of information La Perouse ("Company", "we", "us" or "our") may collect from you or that you may provide when you visit the website: https://www.laperouse.us/ (our "Website"), how we use and share that information, and your choices concerning our data practices."[20]

51. Defendants made these representations concerning securing consumers PII and PHI because they know and understand the severe consequences of losing this data.

52. As early as 2014, the FBI alerted the healthcare industry that they were an increasingly preferred target of hackers, stating "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining Protected Health Information (PHI) and/or Personally Identifiable Information (Personal Information)" so that these companies can take the necessary precautions to thwart such attacks.[21]

53. The healthcare industry has become a rich target for hackers: "High demand for patient information and often-outdated systems are among the nine reasons healthcare is now the biggest target for online attacks."[22] "The IT environments of healthcare organizations are often complex and difficult to secure. Devices and software continue to be used that have reached end-of-life, as upgrading is costly and often problematic. Many healthcare providers use software solutions that have been developed to work on specific – and now obsolete – operating systems and cannot be transferred to supported operating systems."[23]

---

[20] https://laperouse.us/privacypolicy.html (last visited Aug. 19, 2025).

[21] Reuters, FBI warns healthcare firms they are targeted by hackers, August 20, 2014, http://www.reuters.com/article/us-cybersecurity-healthcare-fbi-idUSKBN0GK24U20140820 (last visited Aug. 19, 2025).

[22] *The healthcare industry is at risk*, SwivelSecure https://swivelsecure.com/solutions/healthcare/healthcare-is-the-biggest-target-for-cyberattacks/ (last visited June 28, 2024).

[23] Steve Alder, Editorial: *Why Do Criminals Target Medical Records*, HIPAA Journal (Oct.

54. PII has considerable value and constitutes an enticing and well-known target to hackers. Hackers easily can sell stolen data as there has been a "proliferation of open and anonymous cybercrime forums on the Dark Web that serve as a bustling marketplace for such commerce."[24] PHI, in addition to being of a highly personal and private nature, can be used for medical fraud and to submit false medical claims for reimbursement.

**C. Defendants Failed To Comply With Regulatory Guidance and Industry-Standard Cybersecurity Practices.**

55. Defendants' data security failure stems from their failure to comply with state and federal laws and requirements as well as industry standards governing the protection of PII and PHI.

56. At least 24 states have enacted laws addressing data security practices that require that businesses that own, license or maintain PII to implement and maintain "reasonable security procedures and practices" and to protect PII from unauthorized access.

57. Defendants also failed to comply with Federal Trade Commission ("FTC") guidance on protecting PII and industry-standard cybersecurity practices. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, failing to use reasonable measures to protect PII by companies like Defendants. Several publications by the FTC outline the importance of implementing reasonable security systems to protect data. The FTC has made clear that protecting sensitive customer data should factor into virtually all business decisions.

58. The FTC recommends:

---

14, 2022), https://www.hipaajournal.com/why-do-criminals-target-medical-records/#:~:text=Healthcare%20records%20are%20so%20valuable,credit%20cards%20in%20victims'%20names.

[24] Brian Krebs, *The Value of a Hacked Company*, Krebs on Security (July 14, 2016), http://krebsonsecurity.com/2016/07/the-value-of-a-hacked-company/ (last visited Aug. 19, 2025).


Cotchett, Pitre, McCarthy, LLP
2716 Ocean Park Blvd, Suite 3088
Santa Monica, CA, 90405

- limiting access to customer information to employees who have a business reason to see it;
- keeping customer information in encrypted files provides better protection in case of theft;
- maintaining up-to-date and appropriate programs and controls to prevent unauthorized access to customer information;
- using appropriate oversight or audit procedures to detect the improper disclosure or theft of customer information;
- monitoring both in- and out-bound transfers of information for indications of a compromise, such as unexpectedly large amounts of data being transmitted from your system to an unknown user; and,
- monitoring activity logs for signs of unauthorized access to customer information.[25]

59. The FTC has also issued numerous guides for businesses highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[26]

60. As early as 2016, the FTC updated its publication, *Protecting PII: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[27] The guidelines note businesses should protect the personal customer information that they keep; properly dispose of PII

---

[25] Federal Trade Commission, *Financial Institutions and Customer Information: Complying with the Safeguards Rule*, available at https://www.ftc.gov/tips-advice/business-center/guidance/financial-institutions-customer-information-complying (last visited June 28, 2024).

[26] Federal Trade Commission, *Start With Security* at 2, available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited June 13, 2024).

[27] Federal Trade Commission, *Protecting PII: A Guide for Business*, available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_protecting-personal-information.pdf (last visited June 28, 2024).

that is no longer needed; encrypt information stored on computer networks; understand its network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

61. The FTC recommends that businesses delete payment card information after the time needed to process a transaction; restrict employee access to sensitive customer information; require strong passwords be used by employees with access to sensitive customer information; apply security measures that have proven successful in the particular industry; and verify that third parties with access to sensitive information use reasonable security measures.

62. The FTC also recommends that companies use an intrusion detection system to immediately expose a data breach; monitor incoming traffic for suspicious activity that indicates a hacker is trying to penetrate the system; monitor for the transmission of large amounts of data from the system; and develop a plan to respond effectively to a data breach in the event one occurs.

63. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

64. The FTC has interpreted Section 5 of the FTC Act to encompass

failures to appropriately store and maintain personal data.

65. According to the Federal Bureau of Investigation (FBI), phishing schemes designed to induce individuals to reveal personal information, such as network passwords, were the most common type of cybercrime in 2020, with such incidents nearly doubling in frequency between 2019 and 2020.[28] According to Verizon's 2021 Data Breach Investigations Report, 43% of breaches stemmed from phishing and/or pretexting schemes.[29]

66. On October 28, 2020, the FBI and two federal agencies issued a "Joint Cybersecurity Advisory" warning that they have "credible information of an increased and imminent cybercrime threat to U.S. hospitals and healthcare providers."[30] The Cybersecurity and Infrastructure Security Agency (CISA), the Department of Health and Human Services (HHS), and the FBI issued the advisory to warn healthcare providers to take "timely and reasonable precautions to protect its networks from these threats."[31]

67. In this case, Defendants were at all times fully aware of obligation to protect the PII and PHI of Plaintiffs and Class Members from unauthorized access because Pacific provides management services to over 70 operating entities, 1,200 providers, and over 1.4 million patients annually and La Perouse specializes in medical coding, claims processing, and collections. Defendants were also aware of the significant repercussions if they failed to do so because

[28] *2020 Internet Crime Report*, FBI, https://www.ic3.gov/Media/PDF/AnnualReport/2020_IC3Report.pdf (last visited Aug. 19, 2025).

[29] *2021 DBIR Master's Guide*, VERIZON, https://www.verizon.com/business/resources/reports/dbir/2021/masters-guide/ (subscription required) (last visisted June 28, 2024).

[30] *Ransomware Activity Targeting the Healthcare and Public Health Sector*, JOINT CYBERSECURITY ADVISORY, https://us-cert.cisa.gov/sites/default/files/publications/AA20-302A_Ransomware%20_Activity_Targeting_the_Healthcare_and_Public_Health_Sector.pdf (last visited June 28, 2024).

[31] *Id.*

Defendants collected PII and PHI from thousands of patients and knew that this PII and PHI, if hacked, would result in injury to consumers, including Plaintiffs and Class Members.

68. Based upon the known details of the Data Breach and how it occurred, Defendants also failed to fully comply with industry-standard cybersecurity practices, including, but not limited to, proper firewall configuration, network segmentation, secure credential storage, rate limiting, user-activity monitoring, data-loss prevention, and intrusion detection and prevention.

### D. Defendants Failed to Comply with HIPAA's Data Security Requirements.

69. Defendants are covered by HIPAA (see 45 C.F.R. § 160.102) and are required to comply with the HIPAA Privacy Rule and Security Rule.[32] These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. *See* 45 C.F.R. § 160.103.

70. HIPAA prohibits unauthorized disclosures of "protected health information" and it requires that Defendants implement appropriate safeguards for this information. HIPAA requires that entities covered by its rules, including Defendants, provide notice of a breach of unsecured protected health information—i.e., non-encrypted data—without unreasonable delay and in no case later than 60 calendar days after discovery of a breach.

[32] 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

71. Following a data breach at a HIPAA covered entity, the HIPAA Omnibus Rule dictates it "must now undertake a four-factor risk assessment to determine whether or not PHI has been compromised and overcome the presumption that the breach must be reported." The four-factor risk assessment includes:

a) the nature and extent of the PHI involved in the incident (e.g., whether the incident involved sensitive information like social security numbers);
b) the recipient of the PHI;
c) whether the PHI was actually acquired or viewed; and,
d) the extent to which the risk that the PHI was compromised has been mitigated following unauthorized disclosure (e.g., whether it was immediately sequestered and destroyed)."[33]

72. The HIPPA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, requires HIPAA-covered entities and their business associates to provide notification following a breach of unsecured protected health information.

73. Defendants failed to comply with these HIPAA requirements and, indeed, their own Privacy Practices. Defendants did not:

a) Maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;
b) Adequately protect Plaintiffs' and the Class Members' Personal Information;
c) Ensure the confidentiality and integrity of electronically protected health information created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);
d) Implement technical policies and procedures for electronic information

[33] 78 Fed. Reg. 5641-46; *see also* 45 C.F.R. § 164.304.

systems that maintain electronically protected health information to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

e) Implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

f) Implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

g) Protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. § 164.306(a)(3);

h) Take safeguards to ensure that Defendants' business associates adequately protect protected health information;

i) Conduct the four-factor Risk Analysis following the Data Breach;

j) Properly send timely notice to Plaintiffs and the Class pursuant to 45 C.F.R. §§ 164.400-414;

k) Ensure compliance with the electronically protected health information security standard rules by their workforce, in violation of 45 C.F.R. § 164.306(a)(4); and/or

l) Train all members of their workforce effectively on the policies and procedures with respect to protected health information as necessary and appropriate for the members of their workforce to carry out their functions and to maintain security of protected health information, in violation of 45 C.F.R. §164.530(b).


Cotchett, Pitre, McCarthy, LLP
2716 Ocean Park Blvd, Suite 3088
Santa Monica, CA, 90405

**E. The Data Breach Puts Consumers at Increased Risk of Fraud and Identity Theft.**

74. Defendants' failure to keep Plaintiffs' and Class Members' Private Information secure has severe ramifications. Given the sensitive nature of the PII and PHI stolen in the Data Breach—dates of birth, social security numbers, gender, race, marital status, financial class, medical and billing records, insurance and medical ID #s, and insurance claims with diagnosis codes—hackers can commit identity theft, financial fraud, and other identity-related fraud against Plaintiffs and Class Members now and into the indefinite future. As a result, Plaintiffs have suffered injury and face an imminent and substantial risk of further injury including identity theft and related cybercrimes due to the Data Breach.

75. There is little doubt that consumers' PII and PHI from the Data Breach will be circulating on the dark web, as it is highly valuable. Malicious actors use PII and PHI to, among other things, gain access to consumers' bank accounts, social media, and credit cards. Malicious actors can also use consumers' PII and PHI to open new financial accounts, open new utility accounts, obtain medical treatment using victims' health insurance, file fraudulent tax returns, obtain government benefits, obtain government IDs, or create "synthetic identities."[34]

76. Further, identity thieves often wait months or years to use PII and PHI obtained in data breaches, as victims often become complacent and less diligent in monitoring their accounts after a significant period has passed. These bad actors will also re-use stolen PII and PHI, meaning individuals can be the victim of several cybercrimes stemming from a single data breach. Moreover, although elements of some Plaintiffs' and Class Members' data may have been compromised in other data breaches, the fact that the Breach centralizes the PII

[34] A criminal combines real and fake information to create a new "synthetic" identity, which is used to commit fraud.

and PHI and identifies the victims as Defendants' customers materially increases the risk to Plaintiffs and the Class.

77. The U.S. Government Accountability Office determined that "stolen data may be held for up to a year or more before being used to commit identity theft," and that "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."[35] Moreover, there is often significant lag time between when a person suffers harm due to theft of its PII and PHI and when they discover the harm. Plaintiffs will therefore need to spend time and money to continuously monitor their accounts for years to ensure their PII and PHI obtained in the Data Breach is not used to harm them. Plaintiffs and Class Members thus have been harmed in the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of the Data Breach. In other words, Plaintiffs have been harmed by the value of identity protection services they must purchase in the future to ameliorate the risk of harm they now face due to the Data Breach.

78. Plaintiffs and Class Members have also realized harm in the lost or reduced value of their PII and PHI. Defendants admit the PII and PHI compromised in the Breach is valuable. Defendants collect, retain, and use Plaintiffs' PII and PHI to earn revenue. Plaintiffs' PII and PHI are not only valuable to Defendants, but Plaintiffs also place value on their PII and PHI based on their understanding that their PII and PHI are a financial asset to companies who collect it.[36]

---

[35] U.S. Gov't Accountability Off., GAO-07-737, Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown 42 (2007), https://www.govinfo.gov/content/pkg/GAOREPORTS-GAO-07-737/html/GAOREPORTS-GAO-07-737.htm (last visited June 13, 2024).

[36] *See, e.g.*, Ponemon Institute, LLC, *Privacy and Security in a Connected Life: A Study of US, European and Japanese Consumers* at p. 14 (March 2015) (explaining that 53% of respondents "believe personal data is a financial asset similar to traded goods, currencies or

79. Plaintiffs and Class Members have also been harmed and damaged in the amount of the market value of the hacker's unauthorized access to Plaintiffs' PII and PHI that was permitted without authorization by Defendants. This market value for access to PII and PHI can be determined by reference to both legitimate and illegitimate markets for such information.

80. Moreover, Plaintiffs and Class Members value the privacy of this information and expect Defendants to allocate enough resources to ensure it is adequately protected. Customers would not have done business with Defendants, provided their Private Information, or paid the same prices for Defendants' goods and services had they known Defendants did not implement reasonable security measures to protect their Private Information.[37] Customers reasonably expect that the payments they make to Defendants and those made on their behalf through government programs and insurance, incorporate the costs to implement reasonable security measures to protect customers' PII and PHI. And because consumers value data privacy and security, companies with robust data security practices can command higher prices than those who do not. As a result, Plaintiffs and Class Members did not receive the benefit of their bargain with Defendants because they paid for services they expected but did not receive.

81. Given Defendants' failure to protect consumers' PII and PHI, Plaintiffs and the Class Members have a significant and cognizable interest in obtaining injunctive and equitable relief (in addition to any monetary damages,

---

commodities" and valuing, as but one example, its Social Security number at $55.70), available at https://docplayer.net/836701-Privacy-and-security-in-a-connected-life-a-study-of-us-european-and-japanese-consumers.html.

[37] FireEye, *Beyond the Bottom Line: The Real Cost of Data Breaches* (May 11, 2016), https://www.fireeye.com/blog/executive-perspective/2016/05/beyond_the_bottomli.html (last accessed June 13, 2024) (noting approximately 50% of consumers consider data security to be a main or important consideration when making purchasing decisions and nearly the same percentage would be willing to pay more in order to work with a provider that has better data security. Likewise, 70% of consumers would provide less PII to organizations that suffered a data breach).

restitution, or disgorgement) that protects them from suffering further harm, as their PII and PHI remain in Defendants' possession. Accordingly, this action represents the enforcement of an important right affecting the public interest and will confer a significant benefit on the general public or a large class of persons.

82. In sum, Plaintiffs and Class Members were injured as follows: (i) theft of their PII and PHI and the resulting loss of privacy rights in that information; (ii) improper disclosure of their PII and PHI; (iii) loss of value of their PII and PHI; (iv) the lost value of unauthorized access to Plaintiffs' and Class Members' PII and PHI permitted by Defendants; (v) the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of the Data Breach; (vi) Defendants' retention of profits attributable to Plaintiffs' and Class Members' PII and PHI that Defendants failed to adequately protect; (vii) the certain, imminent, and ongoing threat of fraud and identity theft, including the economic and non-economic impacts that flow therefrom; (viii) ascertainable out-of-pocket expenses and the value of their time allocated to fixing or mitigating the effects of the Data Breach; (ix) overpayments to Defendants for goods and services purchased, as Plaintiffs reasonably believed a portion of the sale price would fund reasonable security measures that would protect their PII and PHI, which was not the case; and (x) nominal damages.

## V. CLASS ACTION ALLEGATIONS

83. Plaintiffs bring this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of a proposed **Nationwide Class** defined as:

> All natural persons in the United States whose Personally Identifiable Information and/or Protected Health Information was compromised as a result of the Data Breach.



Cotchett, Pitre, McCarthy, LLP
2716 Ocean Park Blvd, Suite 3088
Santa Monica, CA, 90405

84. In addition, the California Subclass is defined as follows:

**California Subclass:** All natural persons in the State of California whose Personally Identifiable Information and/or Protected Health Information was compromised as a result of the Data Breach.

85. The Nationwide Class and California Subclass are collectively referred to herein as "Class."

86. **Numerosity and Ascertainability:** Plaintiffs do not know the exact size of the Class or the identity of the Class Members because such information is in the exclusive control of Defendants. Nevertheless, upon information and belief, the Class comprises of thousands of consumers throughout the United States and the State of California. The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court. The names, phone numbers, and addresses of Class Members are identifiable through documents maintained by Defendants.

87. **Commonality and Predominance:** This action involves common questions of law and fact as to all members of the class, which predominate over any question solely affecting individual Class Members. Common questions of law and fact include, but are not limited to, the following:

a) Whether Defendants engaged in the conduct alleged herein;
b) Whether Defendants' conduct is unlawful under California's Consumer Privacy Act §1798.150;
c) Whether Defendants' conduct is an unlawful business act or practice within the meaning of Business and Professions Code section 17200, *et seq.*;
d) Whether Defendants violated HIPAA;
e) Whether Defendants had a legal duty to use reasonable security measures to protect Plaintiffs' and Class Members' PII and PHI;

f) Whether Defendants' failure to implement effective security measures to protect Class Member Private Information was negligent;

g) Whether Defendants timely informed Plaintiffs of the Data Breach;

h) Whether Plaintiffs and Class Members are entitled to injunctive relief; and

i) Whether, as a result of Defendants' conduct, Plaintiffs and the Class are entitled to damages and equitable relief.

88. **Typicality:** Plaintiffs' claims are typical of the other Class Members' claims because all Class Members were comparably injured through Defendants' substantially uniform misconduct described above. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other members of the Class that they seek to represent, and there are no defenses that are unique to Plaintiffs. Plaintiffs and Class Member claims and injuries arise from the same facts and are based on the same law.

89. **Adequacy:** Plaintiffs are adequate Class Representatives because their interests do not conflict with the interests of other Class Members they seek to represent; Plaintiffs have retained competent counsel that is experienced in complex class action litigation; and Plaintiffs intend to vigorously prosecute this action. The interests of Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

90. **Superiority:** A class action is superior to other available methods for fair and efficient adjudication of this controversy. No unusual difficulties are likely to be encountered in the management of this class action. The damages suffered by Class Members are relatively small compared to the expense required to individually litigate their claims against Defendants, so it would be virtually impossible for the Class Members to seek individual redress against Defendants' wrongful conduct.

## VI. CAUSES OF ACTION

### A. Claims Brought on Behalf of the Nationwide Class

### COUNT ONE
### NEGLIGENCE

91. Plaintiffs incorporate the foregoing allegations in Paragraphs 1 to 90 as if fully set forth herein.

92. Defendants owed Plaintiffs and Class Members a duty to exercise reasonable care in safeguarding their personal information, arising from the sensitivity of the information, the expectation the information was going to be kept private, and the foreseeability of their data safety shortcomings resulting in a breach. This duty included designing, implementing, maintaining, monitoring, and testing Defendants' protocols, policies, procedures, practices, networks, and systems to ensure Class Member information was adequately secured from unauthorized access.

93. Defendants' Privacy Policies acknowledged Defendants' duty to adequately protect Plaintiffs' and Class members' PII and PHI.

94. Defendants are covered by HIPAA (see 45 C.F.R. § 160.102) and, as such are required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

95. Defendants owed a duty to Plaintiffs and Class Members to implement administrative, physical and technical safeguards, such as intrusion detection processes that detect data breaches in a timely manner, to protect and secure Plaintiffs' and Class Members' Private Information. Defendants owed a duty to provide industry standard data security measures. Defendants owed a duty


Cotchett, Pitre, McCarthy, LLP
2716 Ocean Park Blvd, Suite 3088
Santa Monica, CA, 90405

under Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, which prohibits the unfair practice of insufficient and unreasonable data protection measures.

96. Defendants owed a duty to disclose the material fact that their data security practices were inadequate to safeguard Plaintiffs' and Class Members' Private Information.

97. Defendants also had independent duties under Plaintiffs' and Class Members' state laws that require Defendants to reasonably protect Plaintiffs' and Class Members' Private Information, and promptly notify them about the Data Breach.

98. Defendants and the Class entered into a special relationship when the Class members entrusted Defendant to protect their Private Information, which provided an independent duty of care. Plaintiffs' and Class Members' willingness to entrust Defendants with their PII was predicated on the understanding that Defendants would take adequate security precautions. Moreover, Defendants were capable of protecting their networks and systems, and the Private Information stored on them, from unauthorized access.

99. Defendants breached their duties by, among other things: (a) failing to implement and maintain adequate data security practices to safeguard Plaintiffs' and Class Members' Private Information, including administrative, physical, and technical safeguards; (b) failing to detect the Data Breach in a timely manner; and (c) failing to disclose that their data security practices were inadequate to safeguard Plaintiffs' and Class Members' PII and PHI.

100. But for Defendants' breach of duties, including the duty to use reasonable care to protect and secure Plaintiffs' and Class members' PII and PHI, Plaintiffs' and Class members' PII and PHI would not have been accessed by unauthorized parties.

101. Plaintiffs and Class Members were probable and foreseeable victims of Defendants' inadequate data security. Defendants knew, or should have known, of the risk of collecting and storing Plaintiffs' and Class Member's PII and PHI and the need for providing appropriate safeguards.

102. It was reasonably foreseeable that the failure to reasonably protect and secure Plaintiffs' and Class members' PII and PHI would result in unauthorized access to Defendants' networks, databases, and computers that stored or contained Plaintiffs' and Class members' PII and PHI.

103. As a result of Defendants' negligent failure to prevent the Data Breach, Plaintiffs and Class members suffered injury, which includes, but is not limited to, exposure to a heightened and imminent risk of fraud, identity theft, and financial harm. Plaintiffs and Class members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiffs and Class members have also incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter and detect identity theft. The unauthorized acquisition of Plaintiffs' and Class members' PII and PHI has also diminished the value of the PII and PHI.

104. The harm to Plaintiffs and Class Members was a proximate, reasonably foreseeable result of Defendants' breaches of aforementioned duties.

105. Therefore, Plaintiffs and Class Members are entitled to damages in an amount to be proven at trial.

## COUNT TWO
## NEGLIGENCE PER SE

106. Plaintiffs incorporate the foregoing allegations 1 to 90 as if fully set forth herein.

107. Under the FTC Act, 15 U.S.C. § 45, Defendants had a duty to


Cotchett, Pitre, McCarthy, LLP
2716 Ocean Park Blvd, Suite 3088
Santa Monica, CA, 90405

provide fair and adequate data security practices to safeguard Plaintiffs' and Class Members' PII.

108. In addition, under state data security statutes, Defendants had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs' and Class Member's PII.

109. Defendants breached their duties to Plaintiffs and Class Members under the FTC Act and state data security statutes, by failing to provide fair, reasonable, or adequate data security practices to safeguard Plaintiffs' and Class Members' PII.

110. Defendants are covered by HIPAA (45 C.F.R. § 160.102) and are required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C. HIPAA prohibits unauthorized disclosures of "protected health information." which includes the information at issue here.

111. Plaintiffs and Class Members were foreseeable victims of Defendants' violations of the FTCA, HIPPA and state data security statutes. Defendants knew or should have known that their failure to implement reasonable security measures would cause damage to Plaintiffs and Class Members.

112. Defendants' failure to comply with applicable law constitutes negligence *per se*.

113. But for Defendants' violations of law, Plaintiffs' and Class Members' PII would not have been accessed by unauthorized parties.

114. Due to Defendants' violations of law, Plaintiffs and Class Members suffered injury of the type contemplated by these laws, including but not limited

to the exposure to a heightened and imminent risk of fraud, identity theft, financial and other harm. Plaintiffs and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiffs and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring, and other protective measures to detect or deter identity theft. The unauthorized acquisition of Plaintiffs' and Class Members' PII has also diminished the value of their PII.

115. The harm to Plaintiffs and Class Members was a proximate, reasonably foreseeable result of Defendants' breaches of applicable law.

116. Therefore, Plaintiffs and Class Members are entitled to damages in an amount to be proven at trial.

## COUNT THREE
## BREACH OF IMPLIED CONTRACT

117. Plaintiffs incorporate the foregoing allegations 1 to 90 as if fully set forth herein.

118. Plaintiffs and Class members were required to provide their PII and PHI to obtain services from Defendants. Plaintiffs and Class members entrusted their PII and PHI to Defendants in order to obtain services from them.

119. By providing their PII and PHI, and upon Defendants' acceptance of such information, Plaintiffs and Class members on one hand, and Defendants on the other hand, entered into implied contracts for the provision of adequate data security, separate and apart from any express contracts concerning the services provided, whereby Defendants were obligated to take reasonable steps to secure and safeguard that information.

120. Defendants had an implied duty of good faith to ensure that the PII and PHI of Plaintiffs and Class members in their possession was only used in


Cotchett, Pitre, McCarthy, LLP
2716 Ocean Park Blvd, Suite 3088
Santa Monica, CA, 90405

accordance with their contractual obligations.

121. Defendants were therefore required to act fairly, reasonably, and in good faith in carrying out their contractual obligations to protect the confidentiality of Plaintiffs' and Class members' PII and to comply with industry standards and state laws and regulations for the security of this information, and Defendants expressly assented to these terms in their Privacy Policies as alleged above.

122. Under these implied contracts for data security, Defendants were further obligated to provide Plaintiffs and all Class members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII and PHI.

123. Plaintiffs and Class members performed all conditions, covenants, obligations, and promises owed to Defendants, including paying for the services provided by Defendants and/or providing the PII and PHI required by Defendants.

124. Defendants breached the implied contracts by failing to take adequate measures to protect the confidentiality of Plaintiffs' and Class members' PII and PHI, resulting in the Data Breach. Defendants unreasonably interfered with the contract benefits owed to Plaintiffs and Class members.

125. Further, on information and belief, Defendants have not yet provided Data Breach notifications to some affected Class members who may already be victims of identity fraud or theft, or are at imminent risk of becoming victims of identity theft or fraud, associated with the PII or PHI that they provided to Defendants. These Class members are unaware of the potential source for the compromise of their PII and PHI.

126. The Data Breach was a reasonably foreseeable consequence of Defendants' actions in breach of these contracts.

127. As a result of Defendants' conduct, Plaintiffs and Class members did not receive the full benefit of the bargain, and instead received services that were of a diminished value as compared to the secure services they paid for. Plaintiffs and Class members, therefore, were damaged in an amount at least equal to the difference in the value of the secure services they paid for and the services they received.

128. Neither Plaintiffs, nor Class members, nor any reasonable person would have provided their PII and PHI to Defendants had Defendants disclosed that their security was inadequate or that they did not adhere to industry-standard security measures.

129. As a result of Defendants' breach, Plaintiffs and Class members have suffered actual damages resulting from theft of their PII and PHI, as well as the loss of control of their PII and PHI, and remain in imminent risk of suffering additional damages in the future.

130. As a result of Defendants' breach, Plaintiffs and the Class members have suffered actual damages resulting from their attempt to mitigate the effect of the breach of implied contract and subsequent Data Breach, including, but not limited to, taking steps to protect themselves from the loss of their PII and PHI. As a result, Plaintiffs and the Class members have suffered actual identity theft and the ability to control their PII and PHI.

131. Accordingly, Plaintiffs and Class members have been injured as a result of Defendants' breach of implied contracts and are entitled to damages and/or restitution in an amount to be proven at trial.

**COUNT FOUR**
**UNJUST ENRICHMENT**

132. Plaintiffs incorporate the foregoing allegations 1 to 90 as if fully set forth herein.

133. Plaintiffs and Class Members conferred a monetary benefit on Defendants in the form of monetary payments—directly or indirectly—for services received.

134. Defendants collected, maintained, and stored the PII and PHI of Plaintiffs and Class Members and, as such, Defendants had knowledge of the monetary benefits conferred by Plaintiffs and Class Members.

135. The money that Plaintiffs and Class Members paid to Defendants should have been used to pay, at least in part, for the administrative costs and implementation of data management and security. Defendants failed to implement—or adequately implement—practices, procedures, and programs to secure sensitive PII and PHI, as evidenced by the Data Breach.

136. As a result of Defendants' failure to implement security practices, procedures, and programs to secure sensitive PII and PHI, Plaintiffs and Class Members suffered actual damages in an amount equal to the difference in the value between services with reasonable data privacy that Plaintiffs and Class Members paid for, and the services they received without reasonable data privacy.

137. Under principles of equity and good conscience, Defendants should not be permitted to retain money belonging to Plaintiffs and Class Members because Defendants failed to implement the data management and security measures that are mandated by industry standards and that Plaintiffs and Class Members paid for.

138. Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiffs and the Class all unlawful or inequitable proceeds received by Defendants. A constructive trust should be imposed upon all unlawful and inequitable sums received by Defendants traceable to Plaintiffs and the Class.


Cotchett, Pitre, McCarthy, LLP
2716 Ocean Park Blvd, Suite 3088
Santa Monica, CA, 90405

**<u>COUNT FIVE</u>**
**DECLARATORY JUDGEMENT**

139. Plaintiffs incorporate the foregoing allegations 1 to 90 as if fully set forth herein.

140. Plaintiffs and the Class have stated claims against Defendants based on negligence, negligence per se and gross negligence, and violations of various state statutes.

141. Defendants failed to fulfill their obligations to provide adequate and reasonable security measures for the PII and PHI of Plaintiffs and the Class, as evidenced by the Data Breach.

142. As a result of the Data Breach, Defendants' system is more vulnerable to unauthorized access and requires more stringent measures to be taken to safeguard the PII and PHI of Plaintiffs and the Class going forward.

143. An actual controversy has arisen in the wake of the Data Breach regarding Defendants' current obligations to provide reasonable data security measures to protect the PII and PHI of Plaintiffs and the Class. Defendants maintain that their security measures were—and still are— reasonably adequate and denies that they previously had or have any obligation to implement better safeguards to protect the PII and PHI of Plaintiffs and the Class.

144. Plaintiffs seek a declaration that Defendants must implement specific additional, prudent industry security practices to provide reasonable protection and security to the PII and PHI of Plaintiffs and the Class. Specifically, Plaintiffs and the Class seek a declaration that Defendants' existing security measures do not comply with their obligations, and that Defendants must implement and maintain reasonable security measures on behalf of Plaintiffs and the Class to comply with their data security obligations.

**B. Claims Brought on Behalf of the California Subclass.**

**<u>COUNT SIX</u>**
**CALIFORNIA CONSUMER PRIVACY ACT ("CCPA")**
**CAL. CIV. CODE SECTION 1798.150, *et seq.***

145. Plaintiffs individually and on behalf of the California Subclass incorporate the allegations set forth in Paragraphs 1 to 90 as if fully set forth herein. This claim is brought under the laws of California.

146. Defendant Pacific is a corporation organized or operated for the profit or financial benefit of its owners.

147. Defendant La Perouse is a limited liability company organized or operated for the profit or financial benefit of its owners.

148. Defendants collected consumers' personal information as defined in Cal. Civ. Code § 1798.140.

149. By failing to protect Plaintiffs' and California Subclass Members' PII and PHI from theft, exfiltration, or unauthorized disclosure, Defendants breached their duties to ensure adequate data security practices and violated § 1798.150 of the CCPA.

150. Defendants have a duty to implement and maintain reasonable security measures to protect Plaintiffs and California Subclass Members' Private Information. Defendants failed to do so.

151. Defendants' actions directly and proximately caused Plaintiffs' and California Subclass Members' Private Information, including names, social security numbers, dates of birth, addresses, emails, home phone numbers, cell phone numbers, medical and billing records, and insurance and medical identification numbers, to be exfiltrated, disclosed, or subjected to unauthorized access.

152. Plaintiffs and California Subclass Members seek equitable relief to ensure Defendants sufficiently secure customers' Private Information by


Cotchett, Pitre, McCarthy, LLP
2716 Ocean Park Blvd, Suite 3088
Santa Monica, CA, 90405

implementing sufficient data security procedures and practices. Defendants continue to hold customers' PII and PHI, Plaintiffs' and California Subclass Members have an interest in ensuring that their Private Information is reasonably protected, and Defendants have demonstrated their inability to sufficiently safeguard their information, demonstrated by the Data Breach.

153. An actual controversy now exists as to whether Defendants have implemented and maintained adequate security procedures and practices under the CCPA, in relation to the nature of the information.

154. Judicial intervention on this issue is necessary and appropriate under the circumstances to prevent further data breaches of Plaintiffs' and California Subclass Members Private Information.

155. Plaintiffs and California Subclass members seek statutory damages or actual damages, including actual financial losses that are a result of the unlawful data breach.

**COUNT SEVEN**
**CALIFORNIA UNFAIR COMPETITION LAW**
**BUSINESS & PROFESSIONS CODE SECTION 17200, *et seq.* ("UCL")**

156. Plaintiffs individually and on behalf of the California Subclass incorporate the allegations set forth in Paragraphs 1 to 90 as if fully set forth herein. This claim is brought under the laws of California. Plaintiffs bring this claim on behalf of themselves and members of the California Subclass.

157. Defendants are "persons" under the UCL, Cal. Bus. & Prof. Code § 17201.

158. Defendants violated the UCL through their unfair and unlawful business practices.

159. Under California's UCL, Cal. Bus. & Prof. Code Section 17200, *et seq.*, a business practice is "unfair" when "any injury it causes outweighs any benefits provide[d] to consumers and the injury is one that the consumers

themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

160. Defendants' failures to implement and maintain adequate security measures do not benefit consumers. Defendants implemented insufficient, ineffective, and cheap security measures. Defendants diverted the funds necessary to ensure sufficient data security to their own profits, which lead to the Data Breach. Defendants did not follow necessary protocols, policies, and procedures necessary for security and encryption in line with industry standards and requirements. Defendants concealed and omitted the material fact that they inadequately secured Plaintiffs and Class Member PII and PHI. Defendants concealed and omitted the material fact that they did not fulfill their statutory obligations and common law duties for security of Class Members' Private Information. Defendants did not timely or adequately notify Plaintiffs or Class Members about the Data Breach, its scope, or the information exfiltrated, such that they could not take appropriate mitigating steps to prevent identity theft and other harm.

161. Defendants were deceptive, misleading, and unreasonable, constituting an unfair business practice as interpreted by Cal. Bus. And Prof. Code Section 17200. Defendants' actions, as described herein, has resulted in harm to consumers who paid for Defendants' products and services inconsistent with reasonable expectations of data security.

162. California's UCL finds a business practice is "unlawful" when Defendants breach state or federal law and the "unfair competition law makes [these breaches] independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008). Defendants engaged in "unlawful" business practices by violating the FTC Act, 15 U.S.C. § 45, the CCPA, Cal. Civ. Code § 1798.100, and California Common law.

163. Defendants' conduct, as alleged herein, is deceptive, misleading, unreasonable, and constitutes unlawful conduct. Defendants' conduct, including misrepresentations and omissions, was material because a regular consumer would be deceived about Defendants' data security standards. Defendants disregarded Plaintiffs' and Class Members' rights. Defendants maliciously, intentionally, and knowingly violated California's Unfair Competition Law.

164. Defendants' unfair and unlawful conduct directly and proximately caused Plaintiffs' and Class Members' injuries, including lost money or property. But for Defendants' unfair and unlawful acts, Plaintiffs' and Class Members' harm would not have occurred, including an increased imminent risk of identity theft, a diminished value for their personal information, and necessary time and expenses for monitoring fraudulent activity. Due to Defendants' unlawful conduct, as alleged herein, customers who entrusted their Private Information to Defendants have suffered injuries-in-fact as a result of the Data Breach.

165. Defendants' failure to enforce proper security measures violates public policy, which is designed to protect consumers' data and to ensure that organizations entrusted with such data adopt necessary security protocols. These objectives are reflected in laws such as the FTC Act, 15 U.S.C. § 45, and the CCPA, Cal. Civ. Code § 1798.100. Consumers cannot reasonably avoid the injuries that Defendants caused as alleged herein. Victims' injuries outweigh potential benefits to the Defendants. Defendants could have furthered their business interests in a manner other than this unfair conduct.

166. Plaintiffs and California Subclass members seek an order enjoining Defendants from continuing their unlawful, deceptive, and unfair business practices. Plaintiffs and California Subclass members seek an order requiring Defendants to implement and maintain sufficient data security practices in accordance with their statutory and common law duties. Plaintiffs and California


Cotchett, Pitre, McCarthy, LLP
2716 Ocean Park Blvd, Suite 3088
Santa Monica, CA, 90405

Subclass members request an award for restitution for the money wrongfully acquired by Defendants' unfair and unlawful practices.

**COUNT EIGHT**
**CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT**
**CALIFORNIA CIVIL CODE SECTION 1750, *et seq.* ("CLRA")**

167. Plaintiffs individually and on behalf of the California Subclass incorporate the allegations set forth in Paragraphs 1 to 90 as if fully set forth herein. This claim is brought under the laws of California.

168. Plaintiffs bring this claim on behalf of themselves and members of the California Subclass.

169. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale of goods. Cal. Civ. Code § 1770.

170. Defendants' unlawful conduct described herein was intended to increase sales to the consuming public and violated Section 1770(a)(5), (a)(7), and (a)(9) of the CLRA by representing that the products and services have characteristics and benefits, such as appropriate data security, that they do not have.

171. Defendants fraudulently deceived Plaintiffs and the California Subclass by representing that their products and services have certain characteristics, benefits, and qualities which they do not have, namely data protection and security. In doing so, Defendants intentionally misrepresented and concealed material facts from Plaintiffs and the California Subclass, specifically by advertising secure services when Defendants in fact failed to institute adequate security measures and neglected system vulnerabilities that led to a data breach. Said misrepresentations and concealment were done with the intention of deceiving Plaintiffs and the California Subclass and depriving them of their legal rights and money.

172. Defendants' claims about the products and services led and continues to lead consumers like Plaintiffs to reasonably believe that Defendants have implemented adequate data security measures when Defendants in fact neglected system vulnerabilities that led to a data breach and enabled hackers to access customers' Private Information.

173. Defendants knew or should have known that adequate security measures were not in place and that consumers' Private Information was vulnerable to a data breach.

174. Plaintiffs and the California Subclass have suffered injury in fact as a result of and in reliance upon Defendants' false representations.

175. Plaintiffs and the California Subclass would not have purchased the products or used the services or would have paid significantly less for the products and services, had they known that their Private Information was vulnerable to a data breach.

176. Defendants' actions as described herein were done with conscious disregard of Plaintiffs' rights, and Defendants were wanton and malicious in their concealment of the same.

177. Plaintiffs and the California Subclass have suffered injury in fact and have lost money as a result of Defendants' unfair, unlawful, and fraudulent conduct. Specifically, Plaintiffs paid for products and services advertised as secure, and consequentially entrusted Defendants with their Private Information, when Defendants in fact failed to institute adequate security measures and neglected vulnerabilities that led to a data breach. Plaintiffs and the California Subclass would not have purchased the products and services or would not have provided Defendants with their Private Information, had they known that their Personal Information was vulnerable to a data breach.

178. Defendants should be compelled to implement adequate security

practices to protect customers' Private Information. Additionally, Plaintiffs and the members of the California Subclass lost money as a result of Defendants' unlawful practices.

179. Plaintiffs and Class Members seek all monetary and nonmonetary relief allowed by law including restitution; reasonable attorneys' fees and costs under California Code of Civil Procedures § 1021.5; and injunctive relief under the CLRA pursuant to Cal. Civ. Code 1782(d) and other appropriate equitable relief.

**<u>COUNT NINE</u>**
**VIOLATION OF CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT**
**CALIFORNIA CIVIL CODE §§ 56 *et seq*.**

180. Plaintiffs individually and on behalf of the California Subclass incorporate the allegations set forth in Paragraphs 1 to 90 as if fully set forth herein. This claim is brought under the laws of California.

181. Plaintiffs are "patient[s]" as defined in Cal. Civ. Code § 56.05(m). Defendants are "a provider[s] of health care," as defined in Cal. Civ. Code § 56.06 because Defendants at all relevant times, had the "purpose of maintaining medical information in order to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care, for the purposes of allowing the individual to manage the individual's information, or for the diagnosis or treatment of the individual." As such, Defendants are subject to the requirements of the California Confidentiality of Medical "information Act ("CMIA"), Cal. Civ. Code § 56.10(a), (d), and (e), 56.36(b), 56.101(a) and (b).

182. As providers of healthcare or as contractors, Defendants are required by the CMIA to ensure that patient's medical information is not disclosed, disseminated, or released without the patient's consent or authorization, and to

preserve the confidentiality of patient's medical information under Cal. Civ. Code §§ 56.06, 56.10, 56.13, 56.20, 56.245, 56.26, 56.35, 56.36, and 56.101.

183. Further, Defendants are required by the CMIA not to disclose medical information regarding patients without authorization under Cal Civ. Code §§ 56.06, 56.10, 56.13, 56.20, 56.245, 56.26, 56.35, 56.104.

184. Defendants are "person[s] licensed in California under California's Business and Professions Code, Cal. Bus. Prof. Code §§ 4000 et seq.

185. Plaintiffs and California Subclass Members are considered "patients" under Cal. Civ. Code § 56.05(m). As patients, Plaintiffs and California Subclass Members, had their "medical information" under Cal. Civ. Code § 56.05(j), created, maintained, preserved, and stored on Defendants' computer networks on or before the date of the Data Breach.

186. Defendants created, maintained, preserved, stored, and negligently exposed Plaintiffs' and Class Members' "medical information" as defined by the CMIA, Cal. Civ. Code 196 § 56.05(j), to unauthorized persons without consent, in violation of Cal Civ. Code § 56.101(a). This information included names, social security numbers, dates of birth, addresses, contact information, medical and billing records, insurance and medical ID numbers, insurance claims, and diagnosis codes, that alone, or with publicly available information, reveals Plaintiffs and Class Members' identities.

187. Defendants further violated Sections Cal Civ. Code §§ 56.06 and 56.101 which prohibit the negligent creation, maintenance, preservation, storage, abandonment, destruction or disposal of confidential medical information.

188. Defendants' negligence or affirmative actions caused the release of Plaintiffs' and California Subclass Members' personally identifiable medical information to the hackers and unauthorized third-parties.

189. Defendants negligently created and failed to maintain, store,

abandon, destroy, or dispose of Plaintiffs' and California Subclass Members' personally identifiable medical information in a manner that preserved the confidentiality of that information in violation of Cal Civ. Code §§ 56.06 and 56.101(a).

190. Plaintiffs and California Subclass Members' medical information exposed in the Data Breach included "electronic medical records" or "electronic health records" as referenced by Cal Civ. Code § 56.101(c) and defined by 42 U.S.C. § 17921(5).

191. Defendants' information systems did not protect Plaintiffs and California Subclass Members' sensitive electronic medical information in violation of Cal Civ. Code § 56.101(b)(1)(A).

192. As a direct and proximate result of Defendants' wrongful conduct, practices, lack of conduct, and omissions, Plaintiffs and California Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to one or more of the following: (i) ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; (ii) actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; (iii) loss of the value of their privacy and the confidentiality of the stolen PII and PHI; (iv) illegal sale of the compromised PII and PHI on the black market; (v) mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; (vi) time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; (vii) expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; (viii) lost value of PII and PHI; lost value of access to PII and PHI permitted by Defendants; (ix) the amount

of the actual present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of Defendants' Data Breach; (x) lost benefits of bargains as well as overcharges for services or products; (xi) nominal and general damages; (xii) and other economic and non-economic harm.

193. As such, Defendants' failure to maintain, store, abandon, destroy, and/or dispose of Plaintiffs and California Subclass Members' highly sensitive medical information in a way that preserved the confidentiality that information violated the CMIA.

194. Plaintiffs and California Subclass Members seek all available relief including actual damages, nominal statutory damages of $1,000, punitive damages, injunctive relief and attorneys' fees, expenses, and costs pursuant to Cal Civ. Code §§ 56.35 and 56.36.

## VII. PRAYER FOR RELIEF

195. Plaintiffs, on behalf of themselves and on behalf of the proposed Class and Subclass, request that the Court:

(a) Certify this case as a class action, appoint Plaintiffs as class representative, and appoint Plaintiffs' Counsel as Class Counsel for Plaintiffs to represent the Class.

(b) Find that Defendants breached their duty to safeguard and protect the PII and PHI of Plaintiffs and Class Members that was compromised in the Data Breach;

(c) Award Plaintiffs and Class Members appropriate relief, including actual and statutory damages, restitution and disgorgement;

(d) Award equitable, injunctive and declaratory relief as may be appropriate;

(e) Award all costs, including experts' fees and attorneys' fees, and the

costs of prosecuting this action;

(f) Award pre-judgment and post-judgment interest as prescribed by law; and

(g) Grant additional legal or equitable relief as this Court may find just and proper.

Dated: August 20, 2025

Respectfully submitted,

*/s/ Thomas E. Loeser*

Thomas E. Loeser (SBN 202724)
**COTCHETT, PITRE & McCARTHY LLP**
2716 Ocean Park Blvd., Ste. 3088
Santa Monica, CA 90405
Telephone: (206) 802-1272
Facsimile: (206)-299-4184
tloeser@cpmlegal.com

Andrew J. Fuller (*pro hac vice* to be filed)
Ellen J. Wen (*pro hac vice* to be filed)
**COTCHETT, PITRE & McCARTHY LLP**
1809 7th Ave., Ste. 1610
Seattle, WA 98101
Telephone: (206) 802-1272
afuller@cpmlegal.com
ewen@cpmlegal.com

*Attorneys for Plaintiffs*