Stephen G. Larson (SBN 145225)
**LARSON LLP**
555 S. Flower Street, 30th Floor
Los Angeles, CA 90071
213-436-4888
*slarson@larsonllp.com*

[*Additional counsel listed in signature block*]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

DAVE SMITH, JILL COHEN, SHAUN PILON, DEIDRE GARRETT, ZIA HICKS, JESSICA SORTDESANZ, and BRANDI BERRY, individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

PACIFIC HEALTHWORKS, LLC and LA PEROUSE, LLC,

*Defendants*.

Case No. 2:25-CV-07831-MCS-AS

**AMENDED CLASS ACTION COMPLAINT**

1. NEGLIGENCE
2. NEGLIGENCE PER SE
3. BREACH OF IMPLIED CONTRACT
4. BREACH OF FIDUCIARY DUTY
5. BREACH OF CONFIDENCE
6. VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE §§ 17200, et seq.
7. VIOLATIONS OF THE CALIFORNIA CONSUMER PRIVACY ACT, CAL. CIV. CODE §§ 1798.150, et seq.
8. VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE SECTION 1750, et seq.
9. VIOLATIONS OF THE CALIFORNIA CONFIDEDENTIALITY OF MEDICAL INFORMATION ACT, CA. CIV. CODE §§ 56, et seq.

10. VIOLATIONS OF THE CALIFORNIA CUSTOMER RECORDS ACT, CAL. CIV. CODE §§ 1798.80, et seq.
11. INVASION OF PRIVACY
12. UNJUST ENRICHMENT
13. DECLRATORY JUDGEMENT

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs Dave Smith, Jill Cohen, Shaun Pilon, Deidre Garrett, Zia Hicks, Jessica Sortdesanz and Brandi Berry, individually and on behalf of all others similarly situated, bring this class action against Defendants Pacific HealthWorks ("Pacific") and La Perouse (collectively, "Defendants") for their failure to properly safeguard the protected health information and personally identifiable information stored within their information network. Plaintiffs' allegations are based on personal knowledge as to their own acts, and upon information and belief as to all other matters based on the investigation conducted by and through their attorneys.

## I. INTRODUCTION

1. This class action arises out of the recent data breach (the "Data Breach") involving Defendants, which collected and stored certain personally identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information") of Plaintiffs and Class Members.

2. Pacific is a physician practice management company that is headquartered in El Segundo, California.[1] It provides services to over 70 operating entities and 1,200 clinics, physician groups, and hospitals that service more than 1.4 million patients a year.[2] Those clients "specialize in emergency room, critical and ICU care, hospitalized patients, anasthesia, and psychiatry, as well as [employ] physician assistants (scribes) who handle medical electronic health records (EHR) for the doctors."[3]

3. La Perouse is a doctor-owned billing and coding management company, and is Pacific's sister company.[4] For over 20 years, La Perouse and its associated

---

[1] Stephanie Schappert, *Pacific HealthWorks Ransomware Attack, Files Leaked from 50 Partner Medical Practices*, CYPBERNEWS (Nov. 17, 2025), https://cybernews.com/news/pacific-healthworks-everest-ransomware-attack-la-perouse-data-leak-physician-groups/.

[2] *Id.*

[3] *Id.*

[4] *About Us*, LA PEROUSE, https://www.laperouse.us/about.html (last visited Nov. 17, 2025).

companies have provided services ranging from MSO, ED/Hospitalist/Anesthesia Management, Telemedicine, and Billing/Coding.[5]

4. In their capacity as physician practice management service providers, Defendants store significant sensitive Private Information. Defendants owe a non-delegable duty to the individuals whose data they obtain and maintain. This duty arises because it is foreseeable that the exposure of Private Information to unauthorized persons, especially to perpetrators of cyberattacks with nefarious intentions, will result in harm to the affected individuals, including, but not limited to: the invasion of their private data, the sale of their Private Information to facilitate identity theft, exposure to scams or phishing attempts, loss of time, economic damages as affected individuals scramble to protect their identities, and/or the countless ways these individuals' peace of mind is destroyed knowing their information is no longer secured.

5. Given the dire consequences of compromised Private Information, individuals expect that their data to be securely protected. Unfortunately, this trust is misplaced and violated when entities, like Defendants, expose themselves to the risk of cyberattacks.

6. The U.S. Department of Health and Human Services (HHS) has warned organizations who hold patient health information of the threat posed by ongoing ransomware attacks. The U.S. Cybersecurity and Infrastructure Agency, the Federal Bureau of Investigation (FBI), and the HHS issued a joint alert on a specific cybercrime group targeting organizations that held PHI.[6]

7. Despite being on notice that it was storing sensitive Private Information that is valuable and vulnerable to cyber attackers, Defendants failed to take basic

---

[5] *Id.*

[6] Ionut Arghire, *US Healthcare Organizations Warned of 'Daixin Team' Ransomware Attacks*, SECURITYWEEK, https://www.securityweek.com/us-healthcare-organizations-warned-daixin-team-ransomware-attacks/ (last accessed Nov. 17, 2025).

security precautions that could have protected Plaintiffs and Class Members' sensitive data.

8. On or around August 9, 2025, the ransomware gang Everest posted that it stole Private Information from Defendants and was holding that data for ransom.[7] Everest provided file samples of the stolen data, including Private Information from patients.[8] About 5,000 people viewed that information on Everest's dark victim blog.[9]

9. Through Defendants' databases, Everst obtained access to the types of information that federal and state law require companies take security measures to protect, including, but not limited to: names, Social Security numbers ("SSNs"), dates of birth, medical and billing records, insurance and medical ID numbers, insurance claims with diagnosis codes, gender, race, marital status, financial class, as well as addresses, emails, and phone numbers.[10]

10. Plaintiffs and Class Members have been victimized by the Data Breach and remain at a continuing and imminent threat of harm, as any combination of this Private Information will forever subject them to being targets of fraud, identity theft, misuse, and other wrongdoings. SSNs cannot easily be changed.

11. The Data Breach was a direct result of Defendants' failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect Private Information. Specifically, Defendants disregarded the rights of Plaintiffs and Class Members by (a) failing to take adequate and reasonable measures to ensure the security of their databases and IT systems; (b) concealing or otherwise omitting the material fact that they did not have systems in place to safeguard Private Information; (c) failing to take available steps to detect and prevent the Data Breach; (d) failing to monitor their databases and IT systems, and to timely detect the Data Breach; and (e)

---

[7] Schappert, *supra* note 1.
[8] *Id.*
[9] *Id.*
[10] *Id.*

failing to provide Plaintiffs and Class Members prompt and accurate notice of the Data Breach.

12. Due to Defendants' inadequate security practices, negligence, and other data security shortcomings, affected Class Members face a constant threat of repeated harm. Further, Class Members face threats of crimes such as fraudulent opening of new financial accounts in Class Members' names, taking out fraudulent loans, using Class Members' information to obtain government benefits, filing fraudulent tax returns, and filing false medical claims.

13. Plaintiffs and Class Members retain a significant interest in ensuring that their Private Information, which remains in Defendants' possession, is protected from further breaches, and seek to remedy the harms suffered as a result of the Data Breach.

14. Plaintiffs, individually, and on behalf of similarly situated persons, seek to recover damages, equitable relief, including injunctive relief designed to prevent a reoccurrence of the Data Breach and resulting injuries, restitution, disgorgement, reasonable costs and attorneys' fees, and all other remedies deemed proper.

## II. PARTIES

**Plaintiffs**

15. Plaintiff David Smith is an adult who, at all relevant times, was a resident and citizen of Los Angeles County in the state of California.

16. Plaintiff Jill Cohen is an adult who, at all relevant times, was a resident and citizen of San Bernardino County in the state of California.

17. Plaintiff Zia Hicks is an adult who, at all relevant times, was a resident of California.

18. Plaintiff Jessica Sortdesanz is an adult who, at all relevant times, was a resident of California.

19. Plaintiff Brandi Berry is an adult who, at all relevant times, was a resident of California.

20. Plaintiff Deidre Garrett is an adult who, at all relevant times, was a resident and citizen of Los Angeles County in the state of California.

21. Plaintiff Shaun Pilon is an adult who, at all relevant times, was a resident and citizen of Los Angeles County in the state of California.

**Defendants**

22. Defendant Pacific HealthWorks is a California based physician practice management company.[11] Pacific services over 70 entities, contracts with over 1,200 providers, and treats nearly 1.4 million patients yearly.[12] Per its filings with the California Secretary of State, Pacific is registered in the state of California with its principal place of business located at 898 North Pacific Coast Highway, STE 600, El Segundo, California, 90245.

23. Defendant La Perouse is a California based billing and coding management company.[13] Per its filings with the California Secretary of State, La Perouse is registered in the state of California with its principal place of business located at 898 North Pacific Coast Highway, STE 600, El Segundo, California, 90245.

## III. JURISDICTION AND VENUE

24. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005, because (1) the amount in controversy in this class action exceeds five million dollars ($5,000,000), excluding interest and costs; (2) there are more than 100 Class Members; (3) at least one Class Member is diverse from Defendants; and (4) the Defendants are not government entities.

25. This Court has jurisdiction over Defendants because they are located within this District and Defendants conduct substantial business in California and in this District through their principal place of business, offices, parents, and affiliates.

---

[11] *Why Choose Pacific Healthworks*, PACIFIC HEALTHWORKS, https://pacifichealthworks.com/index.html (last visited Nov. 14, 2025).
[12] *Id.*
[13] *About Us*, LA PEROUSE, https://www.laperouse.us/about.html (last visited Nov. 14, 2025).

26. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants are headquartered within this Court's jurisdiction and because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## IV. FACTUAL ALLEGATIONS

### A. Data Breaches and the Market for Private Information

27. Data breaches in the United States have become ubiquitous as criminals seek to monetize the stolen data.[14]

28. When a victim's data is compromised in a breach, the victim is exposed to serious ramifications regardless of the sensitivity of the data—including but not limited to identity theft, fraud, decline in credit, inability to access healthcare, and legal consequences.[15]

29. The U.S. Department of Justice's Bureau of Justice Statistics has found that among victims who had personal information used for fraudulent purposes 32% "spent a month or more resolving problems" and the resolution of those problems could take more than a year.[16]

30. The U.S. Government Accountability Office (GAO) has concluded that it is common for data thieves to hold onto stolen data for extended periods of time before utilizing it for identity theft.[17] In the same report, the GAO noted that while credit monitoring services can assist with detecting fraud, those services do not stop it.[18]

---

[14] Statista Research Department, *Number of Data Records Exposed Worldwide From 1st Quarter 2020 to 3rd Quarter 2022*, STATISTA, https://www.statista.com/statistics/1307426/number-of-data-breaches-worldwide/ (last visited May 21, 2024).

[15] Identity Theft Resource Center, *2017 Annual Data Breach Year-End Review*, https://www.idtheftcenter.org/wp-content/uploads/2019/02/ITRC_2018-End-of-Year-Aftermath_FINAL_ V2_combinedWEB.pdf (last visited May 21, 2024).

[16] Erika Harrell, *Victims of Identity Theft, 2014*, U.S. DEPARTMENT OF JUSTICE (Nov. 13, 2017), http://www.bjs.gov/content/pub/pdf/vit14.pdf.

[17] U.S. Government Accountability Office Report to Congressional Requesters, *Data Breaches – Range of Consumer Risks Highlights Limitations of Identity Theft Services*, https://www.gao.gov/assets/700/697985.pdf (last visited May 21, 2024).

[18] *Id.*

31. When companies entrusted with consumer data fail to implement industry best practices, cyberattacks and other data exploitations can go undetected for a long period of time. This worsens the ramifications and can even render the harms irreparable.

32. PII is a valuable commodity for which a black market exists on the dark web, among other places. Personal data can be worth from $1,000–$1,200 on the dark web[19] and the legitimate data brokerage industry is valued at more than $250 billion.[20]

33. Medical data is particularly valuable because, unlike other personal information like credit card numbers that can be quickly changed, medical data is static. This is why companies, like Defendants, that possess medical information are targeted by cyber-criminals.[21]

34. A 2021 report by Invisibly, a team of application developers focused on reclaiming users' data, found that personal medical information is one of the most valuable pieces of information within the data market. The report noted that "[i]t's worth acknowledging that because health care records often feature a more complete collection of the PII User's identity, background, and personal identifying information (PII), health care records have proven to be of particular value for data

[19] Ryan Smith, *Revealed-how much is personal data worth on the dark web?*, INSURANCE BUSINESS MAGAZINE, https://www.insurancebusinessmag.com/ca/news/cyber/revealed--how-much-is-personal-data-worth-on-the-dark-web-444455.aspx (last accessed May 21, 2024); Maria LaMagna, *The sad truth about how much your Google data is worth on the dark web*, MARKETWATCH, HTTPS://WWW.MARKETWATCH.COM/STORY/SPOOKED-BY-THE-FACEBOOK-PRIVACY-VIOLATIONS-THIS-IS-HOW-MUCH-YOUR-PERSONAL-DATA-IS-WORTH-ON-THE-DARK-WEB-2018-03-20 (last accessed May 21, 2024).

[20] Austin Jenkins, *California's Delete Act Gains Steam in More States*, PLURIBUS NEWS (Mar. 12, 2025, at 6:00 ET), https://pluribusnews.com/news-and-events/californias-delete-act-gains-steam-in-more-states/#:~:text=By%20Kemp's%20estimate%2C%20data%20brokering,then%20be%20sold%20to%20advertisers.

[21] Caroline Humer & Jim Finkle, *Your Medical Record is Worth More to Hackers Than Your Credit Card*, REUTERS (Sept. 24, 2014), https://www.reuters.com/article/us-cybersecurity-hospitals/your-medical-record-is-worth-more-to-hackers-than-your-credit-card-idUSKCN0HJ21I20140924.

thieves." While a single SSN might go for $0.53, a complete health care record sells for $250 on average.[22]

| Record Type | Average Price |
|---|---|
| Health Care Record | $250.15 |
| Payment Card Details | $5.40 |
| Banking Records | $4.12 |
| Access Credentials | $0.95 |
| Social Security Number | $0.53 |
| Credit Record | $0.31 |
| Basic PII | $0.03 |

35. Medical records are even worth more than an SSN, credit card, and driver's license combined, according to federal officials. They estimate that medical records can go for anywhere between $250 to $1,000.[23]




[22] *How Much is Your Data Worth? The Complete Breakdown for 2024*, INVISIBLY (July 13, 2021) https://www.invisibly.com/learn-blog/how-much-is-data-worth/.

[23] Kate Wilkinson, *RI Hospitals Fight Cyberattacks on 'Almost a Daily Basis,'* WPRI (Oct. 10, 2023), https://www.wpri.com/target-12/ri-hospitals-fight-cyberattacks-on-almost-a-daily-basis/.

36. In this black market, criminals seek to sell stolen data to identity thieves who desire the data to extort and harass victims, take over victims' identities in order to open financial accounts, and otherwise engage in illegal financial transactions under the victims' names.

37. PII has a distinct, high value—which is why legitimate companies and criminals seek to obtain and sell it. As alleged in more detail below, there is a growing market for children's data.[24]

38. Medical information in particular is extremely valuable to identity thieves, and thus, the medical industry has also experienced disproportionally higher numbers of data theft events than other industries. According to a report by the Health Insurance Portability and Accountability Act Journal, "healthcare data breach statistics clearly show there has been an upward trend in data breaches over the past nine (9) years, with 2018 seeing more data breaches reported than any other year since records first started being published."[25]

39. A study done by Experian found that the "average total cost" of medical identity theft is "about $20,000" per incident, and that most victims of medical identity theft were forced to pay out of pocket costs for healthcare they did not receive to restore coverage.[26] Indeed, data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy as a whole.

## B. The Sensitivity of Customers' Private Information Demands Heightened Protection

[24] Emily Wilson, *The Worrying Trend of Children's Data Being Sold on the Dark Web*, TNW (Feb. 23, 2019), https://thenextweb.com/contributors/2019/02/23/children-data-sold-the-dark- web/.

[25] *Healthcare Data Breach Statistics*, HIPPA JOURNAL, https://www.hipaajournal.com/healthcare-data-breach-statistics/ (last visited May 21, 2024).

[26] *See* Elinor Mills, *Study: Medical Identity theft is costly for victims*, CNET (Mar. 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/>.

40. Entities in the healthcare industry are popular targets for cyberattacks and require top-tier security measures to protect Private Information, especially given that these databases store sensitive patient records.

41. Ponemon Institute, an expert in the annual state of cybersecurity, indicated in 2020 that organizations storing PHI were top targets for cyber-attacks. In fact, Defendants have been on notice for years that PHI is a prime target for scammers due to the amount and value of confidential patient information maintained. In 2019 alone, numerous entities in the healthcare sector suffered high-profile data breaches, including Quest Diagnostics and LabCorp. Indeed, "dozens of data samples from other [Pacific]-connected companies, including Emergent Medical Associates, Benchmark Hospitalists & Intensivists, and AnesthesiaWorks, were also found on the leak site."[27] Everst, the ransomare gang that targeted Defendants, "has listed 248 victims since 2023, with 90 victims in the past 12 months."[28]

42. In a survey released by Ponemon Institute in January 2023, nearly half of respondents (47%) said their organizations experienced a ransomware attack in the past two years, up from 43% in 2021. And 45% of respondents reported complications from medical procedures due to ransomware attacks, up from 36% in 2021.[29]

43. Countless victims impacted by the Data Breach now face a constant threat of being repeatedly harmed, including but not limited to living the rest of their lives knowing that criminals can compile, build, and amass profiles on them for decades – exposing them to a continuing threat of identity theft, disclosure of Private Information, threats, extortion, harassment and phishing scams, and the attendant

---

[27] Stephanie Schappert, *Pacific HealthWorks Ransomware Attack, Files Leaked from 50 Partner Medical Practices*, CYPBERNEWS (Aug. 12, 2025), https://cybernews.com/news/pacific-healthworks-everest-ransomware-attack-la-perouse-data-leak-physician-groups/.

[28] *Id.*

[29] Ron Southwick, *California Medical Group Discloses Ransomware Attack, More Than 3 Million Affected*, CHIEF HEALTHCARE EXECUTIVE (May 10, 2023), https://www.chiefhealthcareexecutive.com/view/california-medical-group-discloses-ransomware-attack-more-than-3-million-affected.

anxiety from not knowing how one's information will be used when it comes into nefarious individuals' hands.

44. Data breaches of this caliber can result in the exposure of extremely sensitive information about children's private medical histories, medical conditions, psychological assessments, psychiatric evaluations, location of schools and residences, and much more, which poses great dangers on its own. The FBI has warned that "widespread collection of student data could have privacy and safety implications if compromised or exploited."[30] According to the FBI, malicious use of sensitive student data "could result in social engineering, bullying, tracking, identity theft, or other means for targeting children."[31] On top of privacy and safety implications, children must also live their entire lives knowing private, sensitive information about their medical histories or conviction records is subject to public exposure at any time.

45. Due to the special risks associated with individuals' data breaches and the increasing frequency with which they are occurring, it is imperative for entities like Defendants to routinely: (a) monitor for system breaches, cyberattacks and other exploitations and (b) update their software, security procedures, and firewalls.

## C. Defendants' Duty to Safeguard Private Information

46. Pacific is "the leading physician practice management company in Southern California,"[32] and therefore collects and processes the personal data for a over a million individuals.[33] La Perouse includes Pacific in its list of "sister companies."[34]

47. Defendants collect, receive, and access consumers' extensive individually identifiable information. These records include Social Security numbers ("SSNs"),

---

[30] *Education Technologies: Data Collection and Unsecured Systems Could Pose Risks to Children*, FBI ALERT NO. I-091318-PSA (Sept. 13, 2018), https://www.ic3.gov/media/2018/180913.aspx.
[31] *Id.*
[32] *Schappert*, supra note 25.
[33] *Id.*
[34] *About Us*, LA PEROUSE, https://www.laperouse.us/about.html (last visited Aug. 14, 2025).

dates of birth, gender, race, marital status, as well as PHI in the form of health insurance information and general health information.[35]

48. The Federal Trade Commission (FTC) has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all decision-making.[36]

49. The FTC has issued numerous guides for entities engaged in commerce highlighting the importance of reasonable data security practices.

50. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business,* which established cybersecurity guidelines for businesses.[37] The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[38]

51. The FTC further recommends that entities not maintain Private Information longer than needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[39]

52. The FTC has brought enforcement actions against entities engaged in commerce for failing to adequately and reasonably protect customer data, treating the

[35] *Schappert*, supra note 25.

[36] *Start with Security*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited May 21, 2024).

[37] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/system/files/documents/plain-language/pdf-0136-protecting-personal-information.pdf (last accessed May 21, 2024).

[38] *Id.*

[39] *Start With Security*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed May 21, 2024).

failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

53. Defendants agreed to and undertook legal duties to maintain the PII and PHI entrusted to them by Plaintiffs and Class Members safely, confidentially, and in compliance with all applicable laws, including the FTC Act, and the Health Insurance Portability and Accountability Act ("HIPAA").

54. Defendants included privacy policies and commitments to maintain the confidentiality of patients' sensitive information.[40] Defendants failed to adhere to their promises and uphold their duty to safeguard individuals' Private Information.

55. Plaintiffs and Class Members provided their Private Information to Defendants with the reasonable expectation and mutual understanding that Pacific and any of their affiliates would comply with their obligations to keep such information confidential and secure from unauthorized access.

56. On a section of its website entitled "Pacific Healthworks HIPAA Privacy Policy" Pacific makes the following statement:[41]

- Pacific Healthworks, LLC. is required by law to:
  1. Assure that patient medical information is kept private and secure and to notify patients following a breach of unsecured PHI.

57. On a section of its website entitled "La Perouse HIPAA Privacy Policy" La Perouse makes the following statement:[42]

---

[40] *Pacific Healthworks HIPAA Privacy Policy*, PACIFIC HEALTHWORKS, https://pacifichealthworks.com/HIPAAprivacypolicy.html (last visited Aug. 14, 2025).
[41] *Id.*
[42] *La Perouse HIPAA Privacy Policy*, LA PEROUSE, https://www.laperouse.us/HIPAAprivacypolicy.html (last visited Aug. 14, 2025).

- La Perouse, LLC. is required by law to:
  1. Assure that patient medical information is kept private and secure and to notify patients following a breach of unsecured PHI.

58. Defendants' failure to provide adequate security measures to safeguard customers' Private Information is especially egregious because they operate in a field which has recently been a frequent target of scammers attempting to fraudulently gain access to customers' highly confidential Private Information.

59. Since the Data Breach, Class Members face a constant threat of continued harm. Now that their sensitive personal and medical information—their names, SSNs, health insurance information, and general health information—is in possession of third parties, Class Members must worry about being victimized for the rest of their lives. Furthermore, data breaches affecting minors' Private Information compromises children's whereabouts and routines, subjecting them to the danger of potential attacks, embarrassment, or even kidnapping.

60. Plaintiffs and other similarly situated individuals trusted Defendants with sensitive and valuable Private Information. Had Defendants disclosed to Plaintiffs and Class Members that their data systems were not secure and were vulnerable, Plaintiffs would not have trusted Defendants with such sensitive information. In fact, Defendants would have been forced to adopt reasonable data security measures and to comply with state and federal law.

61. Defendants knew or should have known that Plaintiffs and Class Members would reasonably rely upon and trust Defendants' express and implied promises regarding the security and safety of their data and systems.

62. Defendants had obligations created by HIPAA, FTCA, contract, industry standards, common law, and representations made to Plaintiffs and Class Members to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

63. By collecting victims' sensitive Private Information and failing to protect it by maintaining inadequate security systems, failing to properly archive the Private Information, allowing access to third parties, and failing to implement security measures, Defendants caused harm to Plaintiffs and all affected individuals.

### D. Defendants' Failure to Protect Against the Data Breach and Its Impact on the Class

64. At all material times, Defendants failed to maintain proper security measures despite their promises of safety and security to consumers.

65. On or about August 8, 2025, it was discovered that Defendants had fallen victim to a ransomware attack.[43] The known ransomware gang Everest posted on its blog that "[b]illing data, as well as personal data of more than 50 organizations, will be published" if Defendants did not pay Everest its demanded ransom.[44]

66. The ransomware gang provided hundreds of sample files, including a mass of internal company documents and private patient data, to prove that it had accessed the data.[45] As of August 12, 2025, approximately 5,000 individuals had already viewed the posted data, which included names, social security numbers, dates of birth, addresses and other contact information, demographic information, medical and billing records, insurance and medical ID numbers, and insurance claims with diagnosis codes.[46]

67. Early reports indicate that the Data Breach may have affected sensitive medical data belonging to over 1.4 million patients.[47]

---

[43] *Ransomware Group everest Hits: Pacific HealthWorks*, HookPhish, Aug. 10, 2025, https://www.hookphish.com/blog/ransomware-group-everest-hits-pacific-healthworks-9/.

[44] Stefanie Schappert, *Pacific HealthWorks Ransomware Attack, Files Leaked from 50 Partner Medical Practices*, CYBERNEWS (Aug, 12, 2025), https://cybernews.com/news/pacific-healthworks-everest-ransomware-attack-la-perouse-data-leak-physician-groups/.

[45] *Id.*

[46] *Id.*

[47] *Pacific HealthWorks Data Breach: 1.4M Patient Records Exposed*, TroyPoint, August 12, 2025, https://troypoint.com/pacific-healthworks-data-breach/.

68. At the time of this filing, Defendants have not publicly acknowledged the Data Breach or made other efforts to notify affected individuals.

69. Defendants knew that Private Information was valuable on the dark web and therefore knew that they were a potential target for cybercrime. Despite Defendants' knowledge of the sensitivity of their stored data, Defendants failed to implement proper security measures to secure and protect the Private Information of their patients. As a result of Defendants' negligence, and/or wanton disregard in their protection of consumers' Private Information, affected individuals must live the rest of their lives knowing that criminals are able to compile, build, and amass their profiles for decades to come, exposing them to a never-ending threat of targeted extortion, identity theft, and harassment.

70. Plaintiffs and Class Members have suffered actual harm as a result of Defendants' conduct. Defendants failed to institute adequate security measures and neglected system vulnerabilities that led to a data breach. This breach allowed hackers to access the Private Information of Plaintiffs and Class Members.

71. As explained above, exposure of this information to the wrong people can have serious consequences. The impact of identity theft can have ripple effects, which can adversely affect the future financial trajectories of victims' lives. For example, the Identity Theft Resource Center reports that identity theft can impact an individual's ability to get credit cards and obtain loans, such as student loans or mortgages.[48] For some victims, this could mean the difference between going to college or not, becoming a homeowner or not, or having to take out a high interest payday loan versus a lower-interest loan.

---

[48] *Identity Theft: The Aftermath 2017*, IDENTITY THEFT RESOURCE CENTER, https://www.idtheftcenter.org/wp-content/uploads/images/page-docs/Aftermath_2017.pdf (last visited Feb. 2, 2024).

72. The U.S. GAO found that, "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."[49]

73. There may also be a significant time lag between when personal information is stolen and when it is actually misused. According to the GAO, which conducted a study regarding data breaches:

> "[L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[50]

74. As a direct and proximate result of Defendants' breach of confidence and failure to protect the Private Information of individuals, Plaintiffs and Class Members have been injured by facing ongoing, imminent, impending threats of identity theft crimes, fraud, scams, and other misuse of this Private Information, resulting in ongoing monetary loss and economic harm, loss of value of privacy and confidentiality of the stolen Private Information, illegal sales of the compromised Private Information on the black market, mitigation expenses and time spent on credit monitoring, identity theft insurance, credit freezes/unfreezes, expenses and time spent in initiating fraud alerts, contacting third parties, decreased credit scores, lost work time, and other injuries. Defendants, through their misconduct, have enabled numerous bad actors to sell and profit from Private Information that belongs to Plaintiffs and Class Members.

75. But for Defendants' unlawful conduct, scammers would not have access to Plaintiffs and Class Members' Private Information. Defendants' unlawful conduct

---

[49] *See* U.S. GOV'T ACCOUNTABILITY OFF. REPORT TO CONGRESSIONAL REQUESTERS 29 2007. https://www.gao.gov/new.items/d07737.pdf (last visited Feb. 2, 2024).

[50] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, U.S. GOVERNMENT ACCOUNTABILITY OFFICE: REPORT TO CONGRESSIONAL REQUESTERS (June 2007), https://www.gao.gov/new.items/d07737.pdf (last accessed Feb. 2, 2024).

has directly and proximately resulted in a widespread threat of digital attacks against Plaintiffs and Class Members.

76. This Data Breach creates a heightened security concern for the affected individuals, including Plaintiffs, because their Private Information, including unique medical records and other sensitive health information, was disclosed. Medical privacy is among the most important tenets of American healthcare. Patients/customers must be able to trust their physicians, insurers, and pharmacies to protect their medical information from improper disclosure including, but not limited to, their health conditions and courses of treatment. Indeed, numerous state and federal laws require this. And these laws are especially important when protecting individuals with highly sensitive or private medical conditions, disclosure of which can and do subject them to regular discrimination or ridicule.

77. Plaintiffs and Class Members face ongoing, imminent threats of similar fraud claims and scams, resulting in ongoing monetary loss and economic harm; mitigation expenses and time spent on credit monitoring, credit freezes/unfreezes; expenses and time spent in initiating fraud alerts; contacting third parties; decreased credit scores; lost work time; and other injuries.

78. Breach victims often spend significant time monitoring personal accounts (banking, credit monitoring, financial applications, and even other applications/accounts that may be attacked) for fraudulent activity. Many breach victims have had to change their passwords and associated accounts which may be connected to various pieces of stolen Private Information. Plaintiffs and Class Members will need to continuously monitor their credit activity, living in constant fear and apprehension of further attacks.

79. Plaintiffs and Class Members will also spend significant time researching and comparing various identity protection services to mitigate against identity theft and fraud. Had Plaintiffs and Class Members been able to trust that Defendants would

vigilantly protect their data, they would not have to take drastic action, and invest significant time and energy, to protect their Private Information themselves.

80. Phishing and other targeted attacks result from data breaches that disclose Private Information. Phishing scammers use emails and text messages to trick people into giving them their personal information, including but not limited to passwords, account numbers, and social security numbers. Phishing scams are frequently successful, and the FBI reported that Americans lost approximately $57 million to such scams in 2019 alone.[51]

81. Given the highly sensitive nature of the information stolen, and its dissemination to unauthorized parties, Plaintiffs and Class Members have already suffered injury and remain at a substantial and imminent risk of future harm.

82. In sum, Plaintiffs and similarly situated consumers have been injured as follows due to the Data Breach:

a. Theft of their Private Information and the resulting loss of privacy rights in that information;
b. Improper disclosure of their Private Information;
c. Loss of value of their Private Information;
d. The amount of ongoing reasonable identity defense and credit monitoring services made necessary as mitigation measures;
e. Defendants' retention of profits attributable to Plaintiffs and other Class Members' Private Information that Defendants failed to adequately protect;
f. Economic and non-economic impacts that flow from imminent, and ongoing threat of fraud and identity theft to which Plaintiffs and Class Members are now exposed to;

[51] *See How to Recognize and Avoid Phishing Scams*, FTC CONSUMER ADVICE, https://consumer.ftc.gov/articles/how-recognize-and-avoid-phishing-scams (last accessed Feb. 2, 2024).

g. Ascertainable out-of-pocket expenses and the value of their time allocated to fixing or mitigating the effects of this Data Breach;

h. Emotional distress and fear associated with the imminent threat of harm from the continued phishing scams and attacks as a result of this Data Breach.

## E. Plaintiffs' Experiences

***Plaintiff Dave Smith***

83. Plaintiff Dave Smith is a resident and citizen and is domiciled in the state of California.

84. Plaintiff Smith visited Valley Presbyterian Hospital, located at Vanowen Street, Van Nuys, CA 91405, in 2024 and early 2025 for emergency room services.

85. Upon information and belief, Valley Presbyterian Hospital utilizes Defendant Pacific HealthWorks to handle medical electronic health records for the facility.

86. Valley Presbyterian Hospital is a partnered with AnesthesiaWorks, LLC, which is located at 898 N. Pacific Coast Highway STE 600, El Segundo, CA 90245.[52] Valley Presbyterian Hospital is also partnered with Emergent Medical Associates, also located at 898 N. Pacific Coast Highway STE 600, El Segundo, CA 90245.[53] Emergent Medical Associates ("Emergent") and AnesthesiaWorks, LLC ("AnesthesiaWorks") have the same address as Defendants Pacific and La Perouse.

87. According to reports, data samples from dozens of Pacific-connected companies and facilities, including AnesthesiaWorks, were leaked by the Everest Ransomware Group.[54]

---

[52] See https://www.anesthesiaworks.us/facilities.html (last visited Nov. 17, 2025).

[53] See https://www.ema.us/our_hospitals.html (last visited Nov. 17, 2025).

[54] See https://cybernews.com/news/pacific-healthworks-everest-ransomware-attack-la-perouse-data-leak-physician-groups/?utm_source=chatgpt.com (last visited Nov. 17, 2025).

88. Plaintiff provided confidential and sensitive Private Information to Defendants in connection with Defendants' provision of their services. Defendants obtained and continue to maintain Plaintiff's Private Information and have a legal duty and obligation to protect that Private Information from unauthorized access and disclosure.

89. Plaintiff is very careful about sharing his sensitive Private Information. Plaintiff stores any documents containing his Private Information in a safe and secure location. Plaintiff has never knowingly transmitted unencrypted sensitive Private Information over the Internet or any other unsecured source.

90. On or around August 13, 2025, Plaintiff Smith discovered that a ransomware attack impacted Pacific HealthWorks internal company documents, potentially including the private data of patients such as Plaintiff Smith.

91. Plaintiff would not have entrusted his Private Information to Defendants had he known that Defendants failed to maintain adequate data security.

92. As a direct and traceable result of the Data Breach, Plaintiff suffered actual injury and damages after his Private Information was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring his accounts and credit reports for fraudulent activity; (b) loss of privacy due to his Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of the bargain because Defendants did not adequately protect his Private Information; (d) emotional distress because identity thieves now possess his sensitive information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that his Private Information has been stolen and likely published on the dark web; (f) diminution in the value of his Private Information, a form of intangible property that Defendants obtained from Plaintiff; and (g) other economic and non-economic harm.

93. As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including checking his bills and accounts to

make sure they were correct as well as spending several hours researching the Data Breach. The time spent dealing with these incidents resulting from the Data Breach is time Plaintiff Smith otherwise would have spent on other activities, such as work and/or recreation. This time has been lost forever and cannot be recaptured.

94. Plaintiff Smith plans on taking additional time-consuming, necessary steps to help mitigate the harm caused by the Data Breach, including continually reviewing his accounts for any unauthorized activity.

95. Plaintiff Smith has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains in Defendants possession, is protected and safeguarded from future breaches.

***Plaintiff Jill Cohen***

96. Plaintiff Cohen is a resident and citizen and is domiciled in the state of California.

97. Plaintiff visited Chino Valley Medical Center, located at 5451 Walnut Ave, Chino, CA 91710, twice in 2023 for emergency room services.

98. Upon information and belief, Chino Valley Medical Center utilizes Defendant Pacific HealthWorks to manage medical electronic health records for the facility.

99. Chino Valley Medical Center is a partnered with AnesthesiaWorks, LLC, which is located at 898 N. Pacific Coast Highway STE 600, El Segundo, CA 90245.[55] AnesthesiaWorks has the same address as Defendants Pacific and La Perouse.

100. According to reports, data samples from dozens of Pacific-connected companies and facilities, including AnesthesiaWorks, were leaked by the Everest Ransomware Group.[56]

---

[55] See https://www.anesthesiaworks.us/facilities.html (last visited Nov. 17, 2025).
[56] See https://cybernews.com/news/pacific-healthworks-everest-ransomware-attack-la-perouse-data-leak-physician-groups/?utm_source=chatgpt.com (last visited Nov 17, 2025).

101. Plaintiff Cohen provided confidential and sensitive Private Information to Defendants in connection with Defendants' provision of their services. Defendants obtained and continue to maintain Plaintiff's Private Information and have a legal duty and obligation to protect that Private Information from unauthorized access and disclosure.

102. Plaintiff Cohen is very careful about sharing her sensitive Private Information. Plaintiff stores any documents containing her Private Information in a safe and secure location. Plaintiff has never knowingly transmitted unencrypted sensitive Private Information over the Internet or any other unsecured source.

103. On or around August 13, 2025, Plaintiff Cohen discovered that a ransomware attack impacted Pacific HealthWorks internal company documents, potentially including the private data of patients such as Plaintiff Cohen.

104. Plaintiff Cohen would not have entrusted her Private Information to Defendants had she known that Defendants failed to maintain adequate data security.

105. As a direct and traceable result of the Data Breach, Plaintiff Cohen suffered actual injury and damages after her Private Information was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring her accounts and credit reports for fraudulent activity; (b) loss of privacy due to her Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of the bargain because Defendants did not adequately protect her Private Information; (d) emotional distress because identity thieves now possess her sensitive information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that her Private Information has been stolen and likely published on the dark web; (f) diminution in the value of her Private Information, a form of intangible property that Defendants obtained from Plaintiff; and (g) other economic and non-economic harm.

106. As a result of the Data Breach, Plaintiff Cohen made reasonable efforts to mitigate the impact of the Data Breach, including checking her bills and accounts

to make sure they were correct as well as spending several hours researching the Data Breach. The time spent dealing with these incidents resulting from the Data Breach is time Plaintiff Cohen otherwise would have spent on other activities, such as work and/or recreation. This time has been lost forever and cannot be recaptured.

107. Plaintiff Cohen plans on taking additional time-consuming, necessary steps to help mitigate the harm caused by the Data Breach, including continually reviewing her accounts for any unauthorized activity.

108. Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains in Defendants possession, is protected and safeguarded from future breaches.

***Plaintiff Zia Hicks***

109. Plaintiff Hicks is a resident and citizen and is domiciled in the state of California.

110. Plaintiff Hicks has been a patient of La Palma Intercommunity Hospital, located at 7901 Walker St, La Palma, CA 90623, for approximately six years.

111. Upon information and belief, La Palma Intercommunity Hospital utilizes Defendant Pacific HealthWorks to manage medical electronic health records for the facility.

112. La Palma Intercommunity Hospital is partnered with Emergent Medical Associates, which is located at 898 N Pacific Coast Hwy STE 600, El Segundo, CA 90245.[57] Emergent has the same address as Defendants Pacific and La Perouse.

113. According to reports, data samples from dozens of Pacific-connected companies, including Emergent, were leaked by the Everest Ransomware Group.[58]

114. Plaintiff Hicks provided confidential and sensitive Private Information to Defendants in connection with Defendants' provision of their services. Defendants

[57] See https://www.ema.us/our_hospitals.html (last visited Nov. 17, 2025).

[58] See https://cybernews.com/news/pacific-healthworks-everest-ransomware-attack-la-perouse-data-leak-physician-groups/?utm_source=chatgpt.com (last visited Nov 17, 2025).

obtained and continue to maintain Plaintiff's Private Information and have a legal duty and obligation to protect that Private Information from unauthorized access and disclosure.

115. Plaintiff Hicks is very careful about sharing her sensitive Private Information. Plaintiff stores any documents containing her Private Information in a safe and secure location. Plaintiff Hicks has never knowingly transmitted unencrypted sensitive Private Information over the Internet or any other unsecured source.

116. On or around August 13, 2025, Plaintiff Hicks discovered that a ransomware attack impacted Pacific HealthWorks internal company documents, potentially including the private data of patients such as Plaintiff Hicks. Plaintiff Hicks would not have entrusted her Private Information to Defendants had she known that Defendants failed to maintain adequate data security.

117. As a direct and traceable result of the Data Breach, Plaintiff Hicks suffered actual injury and damages after her Private Information was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring her accounts and credit reports for fraudulent activity; (b) loss of privacy due to her Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of the bargain because Defendants did not adequately protect her Private Information; (d) emotional distress because identity thieves now possess her sensitive information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that her Private Information has been stolen and likely published on the dark web; (f) diminution in the value of her Private Information, a form of intangible property that Defendants obtained from Plaintiff; and (g) other economic and non-economic harm.

118. As a result of the Data Breach, Plaintiff Hicks made reasonable efforts to mitigate the impact of the Data Breach, including checking her bills and accounts to make sure they were correct as well as spending several hours researching the Data Breach. The time spent dealing with these incidents resulting from the Data Breach is

time Plaintiff Hicks otherwise would have spent on other activities, such as work and/or recreation. This time has been lost forever and cannot be recaptured.

119. Plaintiff Hicks plans on taking additional time-consuming, necessary steps to help mitigate the harm caused by the Data Breach, including continually reviewing her accounts for any unauthorized activity.

120. Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains in Defendants possession, is protected and safeguarded from future breaches.

***Plaintiff Jessica Sortdesanz***

121. Plaintiff Sortdesanz is a resident and citizen and is domiciled in the state of California.

122. Plaintiff Sortdesanz has been a patient UC San Diego Primary Care – Eastlake, located at 2295 Otay Lakes Road, Suite 110, Cula Vista, CA 91915, for approximately two years.

123. Upon information and belief, UC San Diego Primary Care Eastlake utilizes Defendant Pacific HealthWorks to manage medical electronic health records for the facility.

124. Upon information and belief, UC San Diego Primary Care Eastlake is a part of UC San Diego Health System. UC San Diego Health East Campus is partnered with Benchmark Hospitalists & Intensivists ("Benchmark"), which is located at 898 N. Pacific Coast Highway STE 600, El Segundo, CA 90245.[59] Benchmark has the same address as Defendants Pacific and La Perouse.

125. According to reports, data samples from dozens of Pacific-connect companies, including Benchmark, were leaked by the Everest Ransomware Group.[60]

---

[59] See https://www.benchmark.md/contact_us.html (last visited Nov. 17, 2025).

[60] See https://cybernews.com/news/pacific-healthworks-everest-ransomware-attack-la-perouse-data-leak-physician-groups/?utm_source=chatgpt.com (last visited Nov. 17, 2025).

126. Plaintiff Sortdesanz provided confidential and sensitive Private Information to Defendants in connection with Defendants' provision of their services. Defendants obtained and continue to maintain Plaintiff's Private Information and have a legal duty and obligation to protect that Private Information from unauthorized access and disclosure.

127. Plaintiff Sortdesanz is very careful about sharing her sensitive Private Information. Plaintiff stores any documents containing her Private Information in a safe and secure location. Plaintiff Sortdesanz has never knowingly transmitted unencrypted sensitive Private Information over the Internet or any other unsecured source.

128. On or around August 13, 2025, Plaintiff Sortdesanz discovered that a ransomware attack impacted Pacific HealthWorks internal company documents, potentially including the private data of patients such as Plaintiff Sortdesanz.

129. Plaintiff Sortdesanz would not have entrusted her Private Information to Defendants had she known that Defendants failed to maintain adequate data security.

130. On August 11, 2025, Plaintiff Sortdesanz discovered that someone in Indiana was using her personal information to open a child support case in her name.

131. As a direct and traceable result of the Data Breach, Plaintiff Sortdesanz suffered actual injury and damages after her Private Information was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring her accounts and credit reports for fraudulent activity; (b) loss of privacy due to her Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of the bargain because Defendants did not adequately protect her Private Information; (d) emotional distress because identity thieves now possess her sensitive information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that her Private Information has been stolen and likely published on the dark web; (f) diminution in

the value of her Private Information, a form of intangible property that Defendants obtained from Plaintiff; and (g) other economic and non-economic harm.

132. As a result of the Data Breach, Plaintiff Sortdesanz made reasonable efforts to mitigate the impact of the Data Breach, including checking her bills and accounts to make sure they were correct as well as spending several hours researching the Data Breach. The time spent dealing with these incidents resulting from the Data Breach is time Plaintiff Sortdesanz otherwise would have spent on other activities, such as work and/or recreation. This time has been lost forever and cannot be recaptured

133. Plaintiff Sortdesanz plans on taking additional time-consuming, necessary steps to help mitigate the harm caused by the Data Breach, including continually reviewing her accounts for any unauthorized activity.

134. Plaintiff Sortdesanz has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains in Defendants possession, is protected and safeguarded from future breaches.

***Plaintiff Brandi Berry***

135. Plaintiff Berry is a resident and citizen and is domiciled in the state of California.

136. Plaintiff Berry has been a patient of Corona Regional Medical Center, located at 800 S Main St, Corona, CA 92882, for approximately fifteen years.

137. Upon information and belief, Corona Regional Medical utilizes Defendant Pacific HealthWorks to manage medical electronic health records for the facility.

138. Corona Regional Medical is partnered with Benchmark Hospitalists & Intensivists, which is located at 898 N. Pacific Coast Highway STE 600, El Segundo, CA 90245.[61] Benchmark has the same address as Defendants Pacific and La Perouse.

139. According to reports, data samples from dozens of Pacific-connected companies, including Benchmark, were leaked by the Everest Ransomware Group.[62]

140. Plaintiff Berry provided confidential and sensitive Private Information to Defendants in connection with Defendants' provision of their services. Defendants obtained and continue to maintain Plaintiff's Private Information and have a legal duty and obligation to protect that Private Information from unauthorized access and disclosure.

141. Plaintiff Berry is very careful about sharing her sensitive Private Information. Plaintiff stores any documents containing her Private Information in a safe and secure location. Plaintiff Berry has never knowingly transmitted unencrypted sensitive Private Information over the Internet or any other unsecured source.

142. On or around August 13, 2025, Plaintiff Berry discovered that a ransomware attack impacted Pacific HealthWorks internal company documents, potentially including the private data of patients such as Plaintiff Berry.

143. Plaintiff Berry would not have entrusted her Private Information to Defendants had she known that Defendants failed to maintain adequate data security.

144. As a direct and traceable result of the Data Breach, Plaintiff Berry suffered actual injury and damages after her Private Information was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring her accounts and credit reports for fraudulent activity; (b) loss of privacy due to her Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of the bargain because Defendants did not

---

[61] See https://www.benchmark.md/our_hospitals.html (last visited Nov. 17, 2025).

[62] See https://cybernews.com/news/pacific-healthworks-everest-ransomware-attack-la-perouse-data-leak-physician-groups/?utm_source=chatgpt.com (last visited Nov. 17, 2025).

adequately protect her Private Information; (d) emotional distress because identity thieves now possess her sensitive information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that her Private Information has been stolen and likely published on the dark web; (f) diminution in the value of her Private Information, a form of intangible property that Defendants obtained from Plaintiff; and (g) other economic and non-economic harm.

145. As a result of the Data Breach, Plaintiff Berry made reasonable efforts to mitigate the impact of the Data Breach, including checking her bills and accounts to make sure they were correct as well as spending several hours researching the Data Breach. The time spent dealing with these incidents resulting from the Data Breach is time Plaintiff Berry otherwise would have spent on other activities, such as work and/or recreation. This time has been lost forever and cannot be recaptured

146. Plaintiff Berry plans on taking additional time-consuming, necessary steps to help mitigate the harm caused by the Data Breach, including continually reviewing her accounts for any unauthorized activity.

147. Plaintiff Berry has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains in Defendants possession, is protected and safeguarded from future breaches.

***Plaintiff Shaun Pilon***

148. Plaintiff Pilon is a resident and citizen and is domiciled in the state of California.

149. Plaintiff Pilon is a patient of La Palma Intercommunity Hospital, located at 7901 Walker Street, La Palma, CA 90623.

150. Upon information and belief, La Palma Intercommunity Hospital utilizes Defendant Pacific HealthWorks to manage medical electronic health records for the facility.

151. La Palma Intercommunity Hospital is a partnered with Emergent Medical Associates, which is located at 898 N. Pacific Coast Highway STE 600, El Segundo, CA 90245.[63] Emergent has the same address as Defendants Pacific and La Perouse.

152. According to reports, data samples from dozens of Pacific-connected companies, including Emergent, were leaked by the Everest Ransomware Group.[64]

153. Plaintiff Pilon is very careful about sharing his sensitive Private Information. Plaintiff Pilon stores any documents containing his Private Information in a safe and secure location. Plaintiff has never knowingly transmitted unencrypted sensitive Private Information over the Internet or any other unsecured source. On or around August 13, 2025, Plaintiff Pilon discovered that a ransomware attack impacted Pacific HealthWorks internal company documents, potentially including the private data of patients such as Plaintiff Pilon.

154. Plaintiff Pilon would not have entrusted his Private Information to Defendants had he known that Defendants failed to maintain adequate data security.

155. As a direct and traceable result of the Data Breach, Plaintiff Pilon suffered actual injury and damages after his Private Information was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring his accounts and credit reports for fraudulent activity; (b) loss of privacy due to his Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of the bargain because Defendants did not adequately protect his Private Information; (d) emotional distress because identity thieves now possess his sensitive information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that his Private Information has been stolen and likely published on the dark web; (f) diminution in the value of his Private Information, a

[63] See https://www.ema.us/our_hospitals.html (last visited Nov. 17, 2025).

[64] See https://cybernews.com/news/pacific-healthworks-everest-ransomware-attack-la-perouse-data-leak-physician-groups/?utm_source=chatgpt.com (last visited Nov. 17, 2025).

form of intangible property that Defendants obtained from Plaintiff Pilon; and (g) other economic and non-economic harm.

156. As a result of the Data Breach, Plaintiff Pilon made reasonable efforts to mitigate the impact of the Data Breach, including checking his bills and accounts to make sure they were correct as well as spending several hours researching the Data Breach. The time spent dealing with these incidents resulting from the Data Breach is time Plaintiff Pilon otherwise would have spent on other activities, such as work and/or recreation. This time has been lost forever and cannot be recaptured

157. Plaintiff Pilon plans on taking additional time-consuming, necessary steps to help mitigate the harm caused by the Data Breach, including continually reviewing his accounts for any unauthorized activity.

158. Plaintiff Pilon has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains in Defendants possession, is protected and safeguarded from future breaches.

***Plaintiff Diedre Garrett***

159. Plaintiff Garrett is a resident and citizen and is domiciled in the state of California.

160. Plaintiff Garrett has been a patient of La Palma Intercommunity Hospital, located at 7901 Walker Street, La Palma, CA 90623, for approximately six years.

161. Upon information and belief, La Palma Intercommunity Hospital utilizes Defendant Pacific HealthWorks to manage medical electronic health records for the facility.

162. La Palma Intercommunity Hospital is a partnered with Emergent Medical Associates, which is located at 898 N. Pacific Coast Highway STE 600, El Segundo, CA 90245.[65] Emergent has the same address as Defendants Pacific and La Perouse.

[65] See https://www.ema.us/our_hospitals.html (last visited Nov. 17, 2025).

163. According to reports, data samples from dozens of Pacific-connected companies, including Emergent, were leaked by the Everest Ransomware Group.[66]

164. Plaintiff Garrett provided confidential and sensitive Private Information to Defendants in connection with Defendants' provision of their services. Defendants obtained and continue to maintain Plaintiff's Private Information and have a legal duty and obligation to protect that Private Information from unauthorized access and disclosure.

165. Plaintiff Garrett is very careful about sharing her sensitive Private Information. Plaintiff Garrett stores any documents containing her Private Information in a safe and secure location. Plaintiff has never knowingly transmitted unencrypted sensitive Private Information over the Internet or any other unsecured source.

166. On or around August 13, 2025, Plaintiff Garrett discovered that a ransomware attack impacted Pacific HealthWorks internal company documents, potentially including the private data of patients such as Plaintiff Garrett.

167. Plaintiff Garrett would not have entrusted her Private Information to Defendants had she known that Defendants failed to maintain adequate data security.

168. As a direct and traceable result of the Data Breach, Plaintiff Garrett suffered actual injury and damages after her Private Information was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring her accounts and credit reports for fraudulent activity; (b) loss of privacy due to her Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of the bargain because Defendants did not adequately protect her Private Information; (d) emotional distress because identity thieves now possess her sensitive information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that her Private

[66] See https://cybernews.com/news/pacific-healthworks-everest-ransomware-attack-la-perouse-data-leak-physician-groups/?utm_source=chatgpt.com (last visited Nov. 17, 2025).

Information has been stolen and likely published on the dark web; (f) diminution in the value of her Private Information, a form of intangible property that Defendants obtained from Plaintiff; and (g) other economic and non-economic harm.

169. As a result of the Data Breach, Plaintiff Garrett made reasonable efforts to mitigate the impact of the Data Breach, including checking her bills and accounts to make sure they were correct as well as spending several hours researching the Data Breach. The time spent dealing with these incidents resulting from the Data Breach is time Plaintiff Garrett otherwise would have spent on other activities, such as work and/or recreation. This time has been lost forever and cannot be recaptured

170. Plaintiff Garrett plans on taking additional time-consuming, necessary steps to help mitigate the harm caused by the Data Breach, including continually reviewing her accounts for any unauthorized activity.

171. Plaintiff Garrett has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains in Defendants possession, is protected and safeguarded from future breaches.

## V. CLASS ALLEGATIONS

172. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action individually and on behalf classes defined as follows:

> **Nationwide Class**
>
> All individuals residing in the United States whose Private Information was or may have been affected in the Data Breach.
>
> **California Class**
>
> All individuals residing in California whose Private Information was or may have been affected in the Data Breach.

173. The classes above are sometimes referred to collectively as the "Class." Excluded from the Class are: (1) the Judges presiding over the Action, Class Counsel, and members of their families; (2) Defendants and their subsidiaries, parent

companies, successors, predecessors, and any entity in which Defendants or its parents, have a controlling interest, and its current or former officers and directors.

174. Plaintiffs reserve the right to further define or amend this class definition by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

175. This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), and satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these rules.

176. Numerosity: The class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court. Per early reports, there are over 1.4 million indivuals affected by the Data Breach.

177. Commonality: There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented in that the class was exposed to the same common and uniform breach of Defendants' duty and reliance on Defendants' ability to protect Class Members' data. Common questions of law and fact include, but are not limited to, the following:

a. Whether Defendants' conduct is an unlawful business act or practice within the meaning of Business and Professions Code §§ 17200, *et seq*.;
b. Whether Defendants' conduct is an unfair business act or practice within the meaning of Business and Professions Code §§ 17200, *et seq*.;
c. Whether Defendants' conduct is in violation of California Civil Code §§ 1798, *et seq.*;
d. Whether Defendants' conduct is in violation of California Civil Code §§ 56, *et seq.*;

e. Whether Defendants' failure to implement effective security measures to protect Plaintiffs and Class Members' Private Information was negligent;

f. Whether Defendants represented to Plaintiffs and the class that they would protect Plaintiffs and Class Members' Private Information;

g. Whether Defendants owed a duty to Plaintiffs and Class Members to exercise due care in collecting, storing, and safeguarding their Private Information;

h. Whether Defendants breached a duty to Plaintiffs and Class Members to exercise due care in collecting, storing, and safeguarding their Private Information;

i. Whether Class Members' Private Information was accessed, compromised, or stolen in the breach;

j. Whether Defendants' conduct caused or resulted in damages to Plaintiffs and Class Members;

k. Whether Defendants knew or should have known that their systems were vulnerable to a data breach;

l. Whether Defendants adequately addressed the vulnerabilities that allowed for the Data Breach; and

m. Whether, as a result of Defendants' conduct, Plaintiffs and Class Members are entitled to injunctive relief.

178. Typicality: Plaintiffs' claims are typical of the claims of the proposed class, as Plaintiffs and Class Members were harmed by Defendants' uniform unlawful conduct.

179. Adequacy: Plaintiffs will fairly and adequately represent and protect the interests of the proposed class. Plaintiffs have retained competent and experienced counsel in class action and other complex litigation.

180. Predominance: Defendants have engaged in a common course of conduct toward Plaintiffs and Class Members, in that all the Plaintiffs' and Class Members' Private Information was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

181. Superiority: A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class Members to prosecute their claims individually. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

182. Declaratory and Injunctive Relief. In addition, Defendants have acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the class under Federal Rule of Civil Procedure 23(b)(2). Defendants continue to (1) maintain the Private Information of Class Members, (2) fail to adequately protect Class Members' Private Information, and (3) violate Class Members' rights under numerous state consumer protection laws and other claims alleged herein. Defendants have acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.

183. Particular issues under Rule 42(d)(l) are also appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues were set forth above, and include, but are not limited to, whether Defendants failed to timely notify Plaintiffs and Class Members of the Data Breach, and whether Defendants' security measures were reasonable.

184. The litigation and resolution of Class Members' claims are manageable. Individual litigation of the legal and factual issues raised by Defendants' conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

185. Plaintiffs and Class Members have suffered injury in fact as a result of Defendants' false, deceptive, and misleading representations. Plaintiffs would not have sought services from or otherwise provided their Private Information to Defendants but for the reasonable belief that Defendants would safeguard their Private Information.

186. The class is identifiable and readily ascertainable. Notice can be provided to such affected individuals using techniques and a form of notice similar to those customarily used in class actions, and by internet publication, radio, newspapers, and magazines.

187. Defendants have acted on grounds generally applicable to the entire class, thereby making final and/or corresponding declaratory relief appropriate with respect to the class as a whole. The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendants.

188. Absent a class action, Defendants will likely retain the benefits of their wrongdoing. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution. It would be virtually impossible for Class Members individually to effectively redress the wrongs done to them by Defendants. Even if Class Members could afford such individual litigation, the court system could not. Absent a representative action, Class Members will continue to suffer losses and Defendants (and similarly situated companies) will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On behalf of Plaintiffs and the Classes)

189. Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

190. This claim is pleaded on behalf of Plaintiffs and the Nationwide Class or, in the alternative, the California Class.

191. Defendants owed a duty to Plaintiffs and the class to exercise due care in collecting, storing, and safeguarding their Private Information. This duty included but was not limited to: (a) designing, implementing, and testing security systems to ensure that individuals' Private Information was consistently and effectively protected; (b) implementing security systems that are compliant with state and federal mandates; (c) implementing security systems that are compliant with industry practices; and (d) promptly detecting and notifying affected parties of a data breach.

192. Defendants also had a duty to destroy Plaintiffs and Class Members' Private Information within an appropriate amount of time after it was no longer

required by Defendants, in order to mitigate the risk of the stale Private Information being compromised in a data breach.

193. Defendants' duties to use reasonable care arose from several sources, including those described below. Defendants had a common law duty to prevent foreseeable harm to others, including Plaintiffs and members of the class, who were the foreseeable and probable victims of any inadequate security practices.

194. Defendants had a special relationship with Plaintiffs and Class Members, which is recognized by laws and regulations, as well as common law. Defendants were in a position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach. Plaintiffs and Class Members were compelled to entrust Defendants with their Private Information. At relevant times, Plaintiffs and Class Members understood that Defendants would take adequate security precautions to safeguard that information. Only Defendants had the ability to protect Plaintiffs and Class Members' Private Information stored on Defendants' servers.

195. Defendants knew or should have known that Plaintiffs and Class Members' Private Information is information that is frequently sought after by hackers.

196. Defendants knew or should have known that Plaintiffs and Class Members would suffer harm if their Private Information was leaked.

197. Defendants knew or should have known that their security systems were not adequate to protect Plaintiffs and Class Members' Private Information from a data breach, especially in light of the increase in data breaches.

198. Defendants knew or should have known that adequate and prompt notice of the data breach was required such that Plaintiffs and the class could have taken more swift and effective action to change or otherwise protect their Private Information. Defendants failed to provide timely notice upon discovery of the data breach.

199. Defendants' conduct as described above constituted an unlawful breach of their duty to exercise due care in collecting, storing, and safeguarding Plaintiffs and Class Members' Private Information by failing to design, implement, and maintain adequate security measures to protect this information. Moreover, Defendants did not implement, design, or maintain adequate measures to detect a data breach when it occurred or adopt sufficient measures to notify affected parties in the event of a data breach.

200. Defendants' conduct as described above constituted an unlawful breach of their duty to provide adequate and prompt notice of the data breach.

201. Defendants entered a special relationship when Plaintiffs and Class Members entrusted Defendants to protect their Private Information. Plaintiffs and the class trusted Defendants and, in doing so, provided Defendants with their Private Information, based upon Defendants' representations that they would implement adequate systems to secure their information.

202. Defendants breached their duty in this relationship to implement and maintain reasonable measures to protect Plaintiffs and Class Members' Private Information.

203. Plaintiffs and Class Members' Private Information would have remained private and secure had it not been for Defendants' wrongful and negligent breach of their duties. The leak of Plaintiffs and Class Members' Private Information, and all subsequent damages, was a direct and proximate result of Defendants' negligence.

204. Defendants' negligence was, at least, a substantial factor in causing Plaintiffs and Class Members' Private Information to be improperly accessed, disclosed, and otherwise compromised, and in causing the Class Members other injuries because of the data breaches.

205. The damages suffered by Plaintiffs and Class Members was the direct and reasonably foreseeable result of Defendants' negligent breach of their duties to adequately design, implement, and maintain security systems to protect Plaintiffs' and

Class Members' Private Information. Defendants knew or should have known that their security for safeguarding Plaintiffs' and Class Members' Private Information was vulnerable to a data breach.

206. Defendants' negligence directly caused significant harm to Plaintiffs and the class. Specifically, Plaintiffs and the class are now subject to numerous attacks, including various phishing scams and identity theft.

207. Defendants had information relating to Plaintiffs and Class Members that it knew or should have known to be confidential.

208. Plaintiffs' and Class Members' communications with Defendants about sensitive Private Information and their status as patients/customers were not matters of general knowledge.

209. Defendants breached their fiduciary duty of confidentiality by designing their data protection systems in a way to allow for a data breach of massive caliber.

210. At no time did Plaintiffs or Class Members consent to Defendants' conduct.

211. As a direct and proximate cause of Defendants' actions, Plaintiffs and the class suffered damage in that the information they intended to remain private is no longer so and their Private Information was disclosed without their knowledge or consent.

**COUNT II**
**NEGLIGENCE PER SE**
**(On behalf of Plaintiffs and the Classes)**

212. Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

213. This claim is pleaded on behalf of Plaintiffs and the Nationwide Class or, in the alternative, the California Class.

214. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or

practice or failure, by entities such as Defendants, to use reasonable measures to protect Private Information. Various FTC publications and orders also form the basis of Defendants' duty.

215. Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with the industry standards. Defendants' conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of a data breach that disclosed Plaintiffs' and the class's Private Information to unauthorized third parties.

216. Defendants violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect Private Information and not complying with industry standards. Defendants' conduct was particularly unreasonable given the nature and amount of Private Information they obtained and stored and the foreseeable consequences of a data breach that disclosed Private Information to unauthorized third parties.

217. Defendants' violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence per se. This negligence was, at least, a substantial factor in causing Class Members' Private Information to be improperly accessed, disclosed, and otherwise compromised, and in causing Class Members' other injuries as a result of the data breach.

218. Plaintiffs and Class Members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) was intended to protect as they are natural persons. In addition, the harm that Class Members have suffered is the type of harm that the FTC Act (and similar state statutes) were intended to prevent. Indeed, the FTC has pursued over fifty enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same or similar harm suffered by Class Members.

219. Defendants also violated other laws in allowing and as a result of the Data Breach, including HIPAA, the California Unfair Competition Law, the California Consumer Privacy Act, the California Customer Records Act, and the California Confidentiality of Medical Information Act.

220. As a direct and proximate result of Defendants' violation of law and their negligence, Plaintiffs and Class Members have been injured, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(On behalf of Plaintiffs and the Classes)**

141. Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

142. This claim is pleaded on behalf of Plaintiffs and the Nationwide Class or, in the alternative, the California Class.

143. Plaintiffs and Class Members were required to provide, and did provide, their Private Information to Defendants as a condition of receiving healthcare services from their healthcare providers.

144. When Plaintiffs and Class Members provided their Private Information to Defendants in exchange for healthcare services, they entered into implied contracts with Defendants.

145. Pursuant to these implied contracts, Plaintiffs and Class Members provided Defendants with their Private Information. In exchange, Defendants agreed, among other things: (1) to take reasonable measures to protect the security and confidentiality of Private Information and (2) to protect Private Informationin compliance with federal and state laws and regulations and industry standards.

146. The protection of Private Information was a material term of the implied contracts between Plaintiffs and Class Members, on the one hand, and

Defendants, on the other hand. Had Plaintiffs and Class Members known that Defendants would not adequately protect Private Information they would not have done business with Defendants.

147. Plaintiffs' and Class Members' reliance on these implied contracts is further supported by the various promises of data security promised by Defendants, including, among other things, by virtue of their HIPAA Privacy Policies.

148. Plaintiffs and Class Members performed their obligations under the implied contract when they provided Defendants with their Private Information.

149. Defendants breached their obligations under their implied contracts with Plaintiffs and Class Members by failing to implement and maintain reasonable security measures to protect their Private Information.

150. The damages sustained by Plaintiffs and Class Members as described above were the direct and proximate result of Defendants' material breaches of their agreements.

151. Plaintiffs and Class Members were damaged by Defendants' breach of implied contracts because: (i) they have suffered actual harm or identity theft; (ii) they face a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their Private Information was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their Private Information has been breached; (v) they were deprived of the value of their Private Information, for which there is a well-established national and international market; (vi) they were deprived of the benefit of their bargain; and/or (vii) they lost time and money incurred to mitigate and remediate the effects of the breach, including the increased risks of identity theft they face and will continue to face.

**COUNT IV**
**BREACH OF FIDUCIARY DUTY**
**(On behalf of Plaintiffs and the Classes)**

152. Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

153. This claim is pleaded on behalf of Plaintiffs and the Nationwide Class or, in the alternative, the California Class.

154. A relationship existed between Plaintiffs and Class Members, on the one hand, and Defendants on the other hand, in which Plaintiffs and Class Members put their trust in Defendants to protect the Private Information of Plaintiffs and Class Members and Defendants accepted that trust.

155. Defendants breached the fiduciary duties that they owed to Plaintiffs and Class Members by failing to act with the utmost good faith, fairness, and honesty, failing to act with the highest and finest loyalty, and failing to protect the Private Information of Plaintiffs and Class Members.

156. Defendants' breach of fiduciary duty was a legal cause of damage to Plaintiffs and Class Members.

157. But for Defendants' breach of fiduciary duty, the damage to Plaintiffs and Class Members would not have occurred.

158. Defendants' breach of fiduciary duty contributed substantially to producing the damage to Plaintiffs and Class Members.

159. As a direct and proximate result of Defendants' breach of fiduciary duty, Plaintiffs and Class Members are entitled to and demand actual, consequential, and nominal damages, and injunctive relief.

**COUNT V**
**BREACH OF CONFIDENCE**
**(On behalf of Plaintiffs and the Classes)**

160. Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

161. This claim is pleaded on behalf of Plaintiffs and the Nationwide Class or, in the alternative, the California Class.

162. At all times during Plaintiffs and Class Members' interactions with Defendants, Defendants were fully aware of the confidential and sensitive nature of Plaintif and Class Members' Private Information in their possession.

163. Defendants' relationship with Plaintiffs and Class Members was governed by terms and expectations that Plaintiffs' and Class Members' Private Information would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

164. Plaintiffs and Class Members provided their Private Information to Defendants with the explicit and implicit understanding that Defendants would protect and not permit the Private Information to be disseminated to any unauthorized third parties.

165. Plaintiffs and Class Members provided their Private Information to Defendants with the explicit and implicit understanding that Defendants would take reasonable and industry standard precautions to protect their Private Information from unauthorized disclosure.

166. Defendants voluntarily received in confidence Plaintiffs' and Class Members' Private Information with the understanding that Private Information would not be disclosed or disseminated to unauthorized third parties or to the public.

167. Due to Defendants' failure to prevent or avoid the data breach, Plaintiffs' and Class Members' Private Information was disclosed and misappropriated to unauthorized third parties beyond Plaintiffs' and Class Members' confidence, and without their express permission.

168. As a proximate result of such unauthorized disclosures, Plaintiffs and Class Members suffered damages.

169. But for Defendants' disclosure of Plaintiffs' and Class Members' Private Information in violation of the parties' understanding of confidence, their Private Information would not have been compromised, stolen, viewed, access, and used by unauthorized third parties.

170. The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendants' inadequate security of Plaintiffs and Class Members' Private Information. Defendants knew or should have known that their methods of accepting, storing, transmitting, and using Plaintiffs and Class Members' Private Information were inadequate.

171. As a direct and proximate result of Defendants' negligent conduct, Plaintiffs and Class Members have suffered injury, including but not limited to: (i) threat of identity theft; (ii) the loss of the opportunity in how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) the continued risk to their Private Information, which may remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect it; and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the data breach for the rest of Plaintiffs' and Class Members' lives.

172. As a direct proximate result of such unauthorized disclosures, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

## COUNT VI
## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW BUSINESS & PROFESSIONS CODE §§ 17200, *ET SEQ.*
## (On behalf of Plaintiffs and the California Class)

173. Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

174. This claim is pleaded on behalf of Plaintiffs and the California Class.

175. The California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*. ("UCL"), prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising, as defined by the UCL and relevant case law.

176. By reason of Defendants' above-described wrongful actions, inactions, and omissions, the resulting Data Breach, and the unauthorized disclosure of Plaintiffs' and Class members' Private Information, Defendants engaged in unfair and unlawful business practices in violation of the UCL.

177. The acts, omissions, and conduct complained of herein in violation of the UCL were designed and emanated from Defendants' California corporate offices.

178. Plaintiffs suffered injury, in fact, and lost money or property as a result of Defendants' alleged violations of the UCL.

179. The acts, omissions, and conduct of Defendants as alleged herein constitute a "business practice" within the meaning of the UCL.

**A. "Unfair" Prong**

171. Under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*., a challenged activity is "unfair" when "any injury it causes outweighs any benefits provide to consumers and the injury is one that the consumers themselves could not reasonably avoid."

172. Defendants' acts, omissions, and conduct violate the unfair prong of the UCL because Defendants' acts, omissions, and conduct, as alleged herein, offended public policy and constitute immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiffs and other Class Members. The gravity of Defendants' conduct outweighs any potential benefits

attributable to such conduct and there were reasonably available alternatives to further Defendants' legitimate business interests, other than Defendants' conduct described herein.

173. Defendants' failure to utilize, and to disclose that they do not utilize, industry standard security practices, constitutes an unfair business practice under the UCL. Defendants' conduct is unethical, unscrupulous, and substantially injurious to the Class.

174. Defendants' conduct also undermines California public policy—as reflected in statutes like the California Information Practices Act, Cal. Civ. Code §§ 1798, *et seq*., the CCPA concerning consumer privacy, and the CCRA concerning customer records—which seek to protect customer and consumer data and ensure that entities who solicit or are entrusted with personal data utilize reasonable security measures.

175. Defendants' conduct as alleged herein causes injuries to patients, who entrusted Defendants with their Private Information and whose Private Information was leaked as a result of Defendants' unlawful conduct.

176. The injuries caused by Defendants' conduct as alleged herein outweigh any benefits.

177. Defendants' conduct, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable and constitutes an unfair business practice within the meaning of California Business and Professions Code Section 17200.

178. Defendants' conduct also threatens other companies, large and small, who play by the rules. Defendants' conduct stifles competition and has a negative impact on the marketplace.

179. Pursuant to Business and Professions Code Sections 17203, Plaintiffs and Class Members seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their unfair business practices.

180. Plaintiffs and Class Members have suffered injury-in-fact and have lost money or property as a result of Defendants' unfair conduct. Plaintiffs and Class Members relied on Defendants' representations and implied promises regarding their security measures and trusted that Defendants would keep Private Information safe and secure. Plaintiffs and Class Members accordingly provided their Private Information to Defendants, reasonably believing and expecting that their Private Information would be safe and secure. Plaintiffs and Class Members would not have given Defendants their Private Information had they known that their Private Information was vulnerable to a data breach. Likewise, Plaintiffs and Class Members seek an order mandating that Defendants implement adequate security practices to protect their Private Information.

181. Plaintiffs and Class Members seek and request an order awarding Plaintiffs and the class restitution of the money wrongfully acquired by Defendants by means of Defendants' unfair and unlawful practices.

**B. "Unlawful" Prong**

182. California Business and Professions Code Section 17200, *et seq.*, identifies violations of any state or federal law as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

183. Defendants' unlawful conduct, as alleged in the preceding paragraphs, violates California Civil Code Section 1750, *et seq*.

184. Defendants' conduct, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable and constitutes unlawful conduct.

185. Defendants have engaged in "unlawful" business practices by violating multiple laws, including California's Consumer Records Act, Cal. Civ. Code §§ 1798.81.5 (requiring reasonable data security measures) and 1798.82 (requiring timely breach notification), the FTC Act, 15 U.S.C. § 45, California's Confidentiality

of Medical Information Act, Cal. Civ. Code § 56, California's Consumer Privacy Act, Cal. Civ. Code § 1798.100, and California common law. Defendants failed to notify all their affected customers regarding said Data Breach in a timely manner, failed to take reasonable security measures, or comply with the FTC Act, and California common law.

186. Furthermore, Defendants failed to post the proper notice with the California Attorney General, and to date, they have not, failing to notify the affected customers, and seeking to disguise the substantial and impeding threat of identity theft that they caused and continues to cause to consumers.

187. Defendants knew or should have known of their unlawful conduct.

188. As alleged in the preceding paragraphs, the misrepresentations by Defendants detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code section 17200.

189. Defendants could have furthered their legitimate business interests in ways other than by their unlawful conduct.

190. Pursuant to Business and Professions Code Sections 17203, Plaintiffs and Class Members seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their unlawful business practices.

191. Plaintiffs and Class Members have suffered injury-in-fact and have lost money or property as a result of Defendants' conduct. Plaintiffs and Class Members relied on Defendants' representations and implied promises regarding their security measures and trusted that Defendants would keep their Private Information safe and secure. Plaintiffs and Class Members accordingly provided their Private Information to Defendants, reasonably believing and expecting that their Private Information would be safe and secure. Plaintiffs and Class Members would not have given Defendants their Private Information had they known that their Private Information was vulnerable to a data breach.

192. Plaintiffs and the members of the class seek an order mandating that Defendants implement adequate security practices to protect consumers' Private Information. Additionally, Plaintiffs and the members of the class seek and request an order awarding Plaintiffs and the class restitution of the money wrongfully acquired by Defendants by means of Defendants' unfair and unlawful practices.

**COUNT VII**
**VIOLATION OF CALIFORNIA CONSUMER PRIVACY ACT ("CCPA")**
**CAL. CIV. CODE SECTION 1798.150, *ET SEQ*.**
**(On behalf of Plaintiffs and the California Class)**

193. Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

194. This claim is pleaded on behalf of Plaintiffs and the California Class.

195. The CCPA, Cal. Civ. Code § 1798.150(a), creates a private cause of action for violations of the CCPA. Section 1798.150(a) specifically provides: any consumer whose nonencrypted and nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5, is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for any of the following: (A) To recover damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater; (B) Injunctive or declaratory relief; (C) Any other relief the court deems proper.

196. Defendants are each a "business" under § 1798.140(d) in that they are corporations organized for profit or financial benefit of their shareholders or other owners, and, on information and belief, have annual revenues of in excess of $25,000,000.

197. Plaintiffs and Class Members are covered "consumers" under § 1798.140(i) in that they are natural persons, whose records were maintained in California, by a California based entity, and on California-based servers.

198. The Private Information of Plaintiffs and Class Members at issue in this lawsuit constitutes "personal information" under § 1798.150(a) and 1798.81.5.

199. Defendants knew or should have known that their data security systems and practices were inadequate to safeguard Plaintiffs' and Class Members' Private Information and that the risk of a data breach or theft was highly likely. Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the Private Information of Plaintiffs and Class Members. Specifically, Defendants subjected Plaintiffs and Class Members' Private Information to an unauthorized access and exfiltration, theft, or disclosure as a result of Defendants' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, as described herein.

200. As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members were injured and lost money or property, including but not limited to the loss of Plaintif and Class Members' legally protected interest in the confidentiality and privacy of their Private Information, and additional losses described herein.

201. In accordance with Cal. Civ. Code § 1798.150(b)(1), prior to the filing of this Complaint, Plaintiffs' counsel served Defendants with notice of these CCPA violations by certified mail, return receipt requested.

202. If Defendants fail to respond to Plaintiffs' notice letters or if they refuse to rectify the violations detailed above and give notice to all affected consumers within 30 days of the date of written notice, Plaintiffs also will seek actual, punitive, and statutory damages, restitution, attorneys' fees and costs, and any other relief the Court deems proper as a result of Defendants' CCPA violations.

## COUNT VIII
## VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT
## CAL. CIV. CODE SECTION 1750, *ET SEQ*. ("CLRA")
## (On behalf of Plaintiffs and the California Class)

203. Plaintiffs individually and on behalf of the California Subclass incorporate the allegations set forth in the foregoing as if fully set forth herein. This claim is brought under the laws of California.

204. Plaintiffs bring this claim on behalf of themselves and members of the California Subclass.

205. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale of goods. Cal. Civ. Code § 1770.

206. Defendants' unlawful conduct described herein was intended to increase sales to the consuming public and violated Section 1770(a)(5), (a)(7), and (a)(9) of the CLRA by representing that the products and services have characteristics and benefits, such as appropriate data security, that they do not have.

207. Defendants fraudulently deceived Plaintiffs and the California Subclass by representing that their products and services have certain characteristics, benefits, and qualities which they do not have, namely data protection and security. In doing so, Defendants intentionally misrepresented and concealed material facts from Plaintiffs and the California Subclass, specifically by advertising secure services when Defendants in fact failed to institute adequate security measures and neglected system vulnerabilities that led to a data breach. Said misrepresentations and

concealment were done with the intention of deceiving Plaintiffs and the California Subclass and depriving them of their legal rights and money.

208. Defendants' claims about the products and services led and continues to lead consumers like Plaintiffs to reasonably believe that Defendants have implemented adequate data security measures when Defendants in fact neglected system vulnerabilities that led to a data breach and enabled hackers to access customers' Private Information.

209. Defendants knew or should have known that adequate security measures were not in place and that consumers' Private Information was vulnerable to a data breach.

210. Plaintiffs and the California Subclass have suffered injury in fact as a result of and in reliance upon Defendants' false representations.

211. Plaintiffs and the California Subclass would not have purchased the products or used the services or would have paid significantly less for the products and services, had they known that their Private Information was vulnerable to a data breach.

212. Defendants' actions as described herein were done with conscious disregard of Plaintiffs' rights, and Defendants were wanton and malicious in their concealment of the same.

213. Plaintiffs and the California Subclass have suffered injury in fact and have lost money as a result of Defendants' unfair, unlawful, and fraudulent conduct. Specifically, Plaintiffs paid for products and services advertised as secure, and consequentially entrusted Defendants with their Private Information, when Defendants in fact failed to institute adequate security measures and neglected vulnerabilities that led to a data breach. Plaintiffs and the California Subclass would not have purchased the products and services or would not have provided Defendants with their Private Information, had they known that their Personal Information was vulnerable to a data breach.

214. Defendants should be compelled to implement adequate security practices to protect customers' Private Information. Additionally, Plaintiffs and the members of the California Subclass lost money as a result of Defendants' unlawful practices.

215. Plaintiffs and Class Members seek all monetary and nonmonetary relief allowed by law including restitution; reasonable attorneys' fees and costs under California Code of Civil Procedures § 1021.5; and injunctive relief under the CLRA pursuant to Cal. Civ. Code 1782(d) and other appropriate equitable relief.

## COUNT IX
## VIOLATION OF CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT CAL. CIV. CODE §§ 56, *ET SEQ.* ("CMIA")
## (On behalf of Plaintiffs and the California Class)

216. Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

217. This claim is pleaded on behalf of Plaintiffs and the California Class.

218. Defendants are subject to the requirements and mandates of the CMIA.

219. CMIA section 56.36 allows an individual to bring an action against a "person or entity who has negligently released confidential information or records concerning him or her in violation of this part."

220. As a direct result of their negligent failure to adequately protect the data they collected from the Plaintiffs and Class Members, Defendants allowed for a data breach which released the Private Information of the Plaintiffs and the class to criminals and/or third parties.

221. The CMIA defines "medical information" as "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care . . . regarding a patient's medical history, mental or physical condition, or treatment."

222. The CMIA defines individually identifiable information as "medical information [that] includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the [customers]' name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the individual's identity." Cal. Civ. Code § 56.050.

223. On information and belief, Defendants are in possession of affected individuals' entire medical history and insurance information, including, but not necessarily limited to, diagnosis and treatment of patients/customers, laboratory test results, prescription data, radiology reports, health plan member number. Further, the compromised data was individually identifiable because it was accompanied by elements sufficient to allow identification of the Plaintiffs by the third parties to whom the data was disclosed.

224. Defendants lawfully came into possession of Plaintiffs' and Class Members' medical information and had a duty pursuant to Section 56.06 and 56.101 of the CMIA to maintain, store and dispose of Plaintiffs' and Class Members' medical records in a manner that preserved their confidentiality. Sections 56.06 and 56.101 of the CMIA prohibit the negligent creation, maintenance, preservation, store, abandonment, destruction, or disposal of confidential medical information.

225. Defendants further violated the CMIA by failing to use reasonable care, and in fact, negligently maintained Plaintiffs' and Class Members' medical information.

226. Since Defendants maintained Plaintiffs and Class Members medical information in California, on California-based servers, where it ultimately was disclosed to third parties, CMIA equally applies to the entire affected class. *See, e.g., Doe v. Meta Platforms, Inc.*, No. 22-cv-03580-WHO, 2023 U.S. Dist. LEXIS 158683,

at *16 (N.D. Cal. Sep. 7, 2023) (holding that another statute, CIPA, could apply to non-residents of California, because the conduct at issue occurred in California).

227. As a direct and proximate result of Defendants' violations of the CMIA, Plaintiffs and Class Members have been injured and are entitled to compensatory damages, punitive damages, and nominal damages of one-thousand dollars ($1,000) for each of Defendants' violations of the CMIA, as well as attorneys' fees and costs pursuant to Cal. Civ. Code § 56.36.

**COUNT X**
**VIOLATIONS OF THE CALIFORNIA CUSTOMER RECORDS ACT CAL. CIV. CODE §§ 1798.80, *ET SEQ.* ("CCRA")**
**(On behalf of Plaintiffs and the California Class)**

228. Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

229. This claim is pleaded on behalf of Plaintiffs and the California Class.

230. "[T]o ensure that personal information about California residents is protected," the California legislature enacted Civil Code § 1798.81.5, which requires that any business that "owns or licenses personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

231. By failing to implement reasonable measures to protect Plaintiffs and Class Members' Private Information, Defendants violated Civil Code § 1798.81.5.

232. In addition, by failing to promptly notify all affected Class Members that their Private Information had been exposed, Defendants violated Civil Code § 1798.82.

233. As a direct or proximate result of Defendants' violations of Civil Code §§ 1798.81.5 and 1798.82, Plaintiffs and California-based Class Members were (and

continue to be) injured and have suffered (and will continue to suffer) the damages and harms described herein.

234. In addition, by violating Civil Code §§ 1798.81.5 and 1798.82, Defendants "may be enjoined" under Civil Code Section 1798.84(e).

235. Defendants' violations of Civil Code §§ 1798.81.5 and 1798.82 also constitute unlawful acts or practices under the UCL, which affords the Court discretion to enter whatever orders may be necessary to prevent future unlawful acts or practices.

236. Plaintiffs and Class Members accordingly request that the Court enter an injunction requiring Defendants to implement and maintain reasonable security procedures, including, but not limited to: (1) ordering that Defendants utilize strong industry standard data security measures for the collection, storage, and retention of customer data; (2) ordering that Defendants, consistent with industry standard practices, engage third party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis; (3) ordering that Defendants engage third party security auditors and internal personnel, consistent with industry standard practices, to run automated security monitoring; (4) ordering that Defendants audit, test, and train their security personnel regarding any new or modified procedures; (5) ordering that Defendants, consistent with industry standard practices, segment consumer data by, among other things, creating firewalls and access controls so that if one area of Defendants' systems are compromised, hackers cannot gain access to other portions of those systems; (6) ordering that Defendants purge, delete, and destroy in a reasonably secure manner class member data not necessary for its provisions of services; (7) ordering that Defendants, consistent with industry standard practices, conduct regular database scanning and security checks; (8) ordering that Defendants, consistent with industry standard practices, evaluate all software, systems, or programs utilized for collection and storage of sensitive Private

Information for vulnerabilities to prevent threats to customers; (9) ordering that Defendants, consistent with industry standard practices, periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and (10) ordering Defendants to meaningfully educate their customers about the threats they face as a result of the loss of their Private Information.

237. Plaintiffs and Class Members further request that the Court require Defendants to identify and notify all members of the class who have not yet been informed of the Data Breach, and to notify affected persons of any future data breaches by email within 24 hours of discovery of a breach or possible breach and by mail within 72 hours.

**COUNT XI**
**INVASION OF PRIVACY**
**(On behalf of Plaintiffs and the Classes)**

238. Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

239. This claim is pleaded on behalf of Plaintiffs and the Nationwide Class or, in the alternative, the California Class.

240. Plaintiffs and Class Members had a reasonable and legitimate expectation of privacy in their Private Information that Defendants failed to adequately protect against compromise from unauthorized third parties.

241. Defendants owed a duty to Plaintiffs and Class Members to keep their Private Information confidential.

242. Defendants failed to protect, and released to unknown and unauthorized third parties, the Private Information of Plaintiffs and Class Members.

243. By failing to keep Plaintiffs' and Class Members' Private Information safe and knowingly utilizing unsecure systems and practices, Defendants unlawfully

invaded Plaintiffs' and Class Members' privacy by, among others, (i) intruding into Plaintiffs' and Class Members' private affairs in a manner that would be highly offensive to a reasonable person; (ii) failing to adequately secure their Private Information from disclosure to unauthorized persons and/or third parties; and (iii) enabling the disclosure of Plaintiffs' and Class Members' Private Information without consent.

244. Defendants knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiffs' and Class Members' position would consider their actions highly offensive.

245. Defendants knew, or acted with reckless disregard of the fact that, organizations handling PHI are highly vulnerable to cyberattacks and that employing inadequate security software would render them especially vulnerable to data breaches.

246. As a proximate result of such unauthorized disclosures, Plaintiffs' and Class Members' reasonable expectations of privacy in their Private Information was unduly frustrated and thwarted, thereby causing Plaintiffs' and the Class Members' undue harm.

247. Plaintiffs and Class Members seek injunctive relief on behalf of the class, restitution, as well as any and all other relief that may be available at law or equity. Unless and until enjoined, and restrained by order of this Court, Defendants' wrongful conduct will continue to cause irreparable injury to Plaintiffs and Class Members. Plaintiffs and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiffs and the class.

## COUNT XII
## UNJUST ENRICHMENT
## (On behalf of Plaintiffs and the Classes)

248. Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

249. This claim is pleaded on behalf of Plaintiffs and the Nationwide Class or, in the alternative, the California Class.

250. To the extent this cause of action contradicts with other causes of action alleged herein, it is plead in the alternative.

251. Plaintiffs and Class Members conferred a monetary benefit on Defendants—namely, they provided and entrusted Defendants with their valuable Private Information. Upon information and belief, Defendants funds their data security measures entirely from payments made on behalf of Plaintiffs and Class Members. Accordingly, a portion of such payments made on behalf of Plaintiffs and Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendants.

252. In exchange for this payment, Plaintiffs and Class Members were entitled to reasonable measures to protect their Private Information.

253. Defendants appreciated, accepted, and retained the benefit bestowed upon them under inequitable and unjust circumstances arising from Defendants' conduct toward Plaintiffs and Class Members as described herein—namely, (a) Plaintiffs and Class Members conferred a benefit on Defendants, and Defendants accepted or retained that benefit and (b) Defendants used Plaintiffs' and Class Members' Private Information for business purposes.

254. Defendants failed to secure Plaintiffs' and Class Members' Private Information and, therefore, did not provide full compensation for the benefit provided on behalf of Plaintiffs and Class Members provided.

255. Defendants acquired the Private Information through inequitable means in that it failed to disclose its inadequate security practices previously alleged.

256. Plaintiffs and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiffs and the class.

257. Under the circumstances, it would be unjust and unfair for Defendants to be permitted to retain any of the benefits conferred on behalf of Plaintiffs and the class.

258. Under the principles of equity and good conscience, Defendants should not be permitted to retain the Private Information belonging to Plaintiffs and Class Members because Defendants failed to implement the data management and security measures that industry standards mandate.

259. Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that they unjustly received on behalf of and for the benefit of Plaintiffs and the class.

**COUNT XIII**
**DECLARATORY JUDGEMENT**
**(On behalf of Plaintiffs and the Classes)**

260. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

261. Plaintiffs and the Class have stated claims against Defendants based on negligence, negligence per se and gross negligence, and violations of various state statutes.

262. Defendants failed to fulfill their obligations to provide adequate and reasonable security measures for the PII and PHI of Plaintiffs and the Class, as evidenced by the Data Breach.

263. As a result of the Data Breach, Defendants' system is more vulnerable to unauthorized access and requires more stringent measures to be taken to safeguard the PII and PHI of Plaintiffs and the Class going forward.

264. An actual controversy has arisen in the wake of the Data Breach regarding Defendants' current obligations to provide reasonable data security measures to protect the PII and PHI of Plaintiffs and the Class. Defendants maintain that their security measures were—and still are— reasonably adequate and denies that they previously had or have any obligation to implement better safeguards to protect the PII and PHI of Plaintiffs and the Class.

265. Plaintiffs seek a declaration that Defendants must implement specific additional, prudent industry security practices to provide reasonable protection and security to the PII and PHI of Plaintiffs and the Class. Specifically, Plaintiffs and the Class seek a declaration that Defendants' existing security measures do not comply with their obligations, and that Defendants must implement and maintain reasonable security measures on behalf of Plaintiffs and the Class to comply with their data security obligations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf themselves and all others similarly situated, pray for judgment and relief on all cause of action as follows:

A. That the Court determines that this action may be maintained as a class action, that Plaintiffs be appointed as Class Representatives, that the undersigned be named as Class Counsel, and that notice of this action be given to Class Members;

B. That the Court enter an order declaring that Defendants' actions, as set forth in this complaint, violate the laws set forth above;

C. An order: 1) prohibiting Defendants from engaging in the wrongful acts stated herein; 2) requiring Defendants to implement adequate security protocols and practices to protect consumers' Private Information consistent with the industry standards, applicable regulations, and federal, state, and/or local laws; 3) mandating the proper notice be sent to all affected parties, and posted publicly; 4) requiring Defendants to protect

all data; 5) requiring Defendants to delete, destroy, and purge the Private Information of Plaintiffs and Class Members unless Defendants can provide reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class Members; 6) requiring Defendants to implement and maintain a comprehensive security program designed to protect the confidentiality and integrity of Plaintiffs' and Class Members' Private Information; 7) requiring Defendants to engage independent third-party security auditors and conduct internal security audit and testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis; 8) requiring Defendants to engage independent third-party security auditors and/or internal personnel to run automated security monitoring; 9) requiring Defendants to create the appropriate firewalls, and implement the necessary measures to prevent further disclosure and leak of any additional information; 10) requiring Defendants to conduct systematic scanning for data breach related issues; 11) requiring Defendants to train and test their employees regarding data breach protocols, archiving protocols, and conduct any necessary employee background checks to ensure that only individuals with the appropriate training and access may be allowed to access the Private Information data; and 12) requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted.

D. That the Court award Plaintiffs and the class damages (both actual damages for economic and non-economic harm and statutory damages) in an amount to be determined at trial;

E. That the Court issue appropriate equitable and any other relief (including monetary damages, restitution, and/or disgorgement) against Defendants to which Plaintiffs and the class are entitled, including but not limited to

restitution and an Order requiring Defendants to cooperate and financially support civil and/or criminal asset recovery efforts;

F. That the Court award Plaintiffs and the class pre- and post-judgment interest (including pursuant to statutory rates of interest set under state law);

G. That the Court award Plaintiffs and the class their reasonable attorneys' fees and costs of suit;

H. That the Court award treble and/or punitive damages insofar as they are allowed by applicable laws; and

I. That the Court award any and all other such relief as the Court may deem just and proper under the circumstances.

DATED: November 17, 2025

Respectfully submitted,

By: */s/ Stephen G. Larson*

Stephen G. Larson (SBN 145225)
**LARSON LLP**
555 S. Flower Street, 30th Floor
Los Angeles, CA 90071
213-436-4888
*slarson@larsonllp.com*

Robert Ahdoot (SBN 172098)
Andrew W. Ferich*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Ave. Suite 500
Burbank, CA 91505
Tel: (310) 474-9111
Fax: (310) 474-8585
*aferich@ahdootwolfson.com*
*rahdoot@ahdootwolfson.com*

John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
(858) 209-6941
*jnelson@milberg.com*

Benjamin F. Johns*
**SHUB JOHNS & HOLBROOK LLP**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
(610) 477-8380
*bjohns@shublawyers.com*

Thomas E. Loeser (SBN 202724)
**COTCHETT, PITRE & McCARTHY, LLP**
2716 Ocean Park Blvd., Ste. 3088
Santa Monica, CA 90405
Telephone: (206)-802-1272
Fax: (206)-299-4184
*tloeser@cpmlegal.com*

Kevin Laukaitis
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon,
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4462
*klaukaitis@laukaitislaw.com*

*Counsel for Plaintiffs*

* Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I, Stephen G. Larson, hereby certify that on this 17th day of November , 2025, I served a true and correct copy of Plaintiff's Amended Class Action Complaint on all parties/counsel of record via the Court's Electronic Filing System.

*/s/ Stephen G. Larson*